---

### In re LESTER.

### In re HULL'S WILL.

(Supreme Court, Appellate Division, Third Department. May 3, 1916.)

1. EXECUTORS AND ADMINISTRATORS ⚖⇒118—MANAGEMENT OF ESTATE—NEGLECT TO SELL PROPERTY AT HIGHEST PRICE.

That an executor failed to sell country residence of testator when offered a satisfactory price therefor, and his later sale thereof at a lower price, does not establish his breach of duty, warranting surcharging his account with the difference, where only a small cash payment was available on the first offer.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 472–482; Dec. Dig. ⚖⇒118.]

2. EXECUTORS AND ADMINISTRATORS ⚖⇒132—ACCOUNTING AND SETTLEMENT— DECREASE OF ASSETS.

That executor spent considerable money of an estate in remodeling an hotel property owned by it left vacant on his hands, his action being with the approval of life tenants and remaindermen, did not warrant surcharging his account.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 437, 545; Dec. Dig. ⚖⇒132.]

3. EXECUTORS AND ADMINISTRATORS ⚖⇒115—ACCOUNTING AND SETTLEMENT— REAL ESTATE COMMISSIONS.

Payment of $3,990 to a firm composed of the executor and his brothers for services in leasing hotel property of the estate *held* not warranted and surchargeable on executor's account.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 467, 468; Dec. Dig. ⚖⇒115.]

⚖⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

4. EXECUTORS AND ADMINISTRATORS ☞111(5)—ACCOUNTING AND SETTLEMENT—COUNSEL FEES.

Payments for legal services to a law firm composed of executor's brothers and father in part covering services purely executorial, *held* excessive and executor's account surcharged therewith.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. § 455; Dec. Dig. ☞111(5).]

5. EXECUTORS AND ADMINISTRATORS ☞111(3)—ALLOWANCES—ON PROBATE.

The surrogate has no jurisdiction in a decree of probate to make an allowance to the executor for counsel fees in establishing the validity of the will.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 451–453; Dec. Dig. ☞111(3).]

6. EXECUTORS AND ADMINISTRATORS ☞109(1)—ACCOUNTING AND SETTLEMENT—COUNSEL FEES.

An executor is not warranted in paying out moneys of the estate for the performance of duties which are purely executorial.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. § 435; Dec. Dig. ☞109(1).]

7. EXECUTORS AND ADMINISTRATORS ☞495(1)—ACCOUNTING AND SETTLEMENT—COMPENSATION—COMMISSIONS.

Commissions are allowed an executor as compensation for his services in the execution of the trust.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. § 2090; Dec. Dig. ☞495(1).]

8. EXECUTORS AND ADMINISTRATORS ☞506(1)—ACCOUNTING AND SETTLEMENT—COUNSEL FEES.

Upon accounting, the burden of proving the claim created by an executor for counsel fees or other expenses of administration rests on him.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 2169–2175; Dec. Dig. ☞506(1).]

9. EXECUTORS AND ADMINISTRATORS ☞506(1)—ACCOUNTING AND SETTLEMENT—CHARGES IN GENERAL.

On accounting, an executor must show the justice of claims paid by him, their necessity and value.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 2169–2175; Dec. Dig. ☞506(1).]

10. EXECUTORS AND ADMINISTRATORS ☞506(1)—ACCOUNTING AND SETTLEMENT—COUNSEL FEES.

Where an executor employs a firm consisting of his brothers and father as lawyers, the relation existing between them increases the rigidity of the rule, holding him to strict proof of the value of such services.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 2169–2175; Dec. Dig. ☞506(1).]

11. EXECUTORS AND ADMINISTRATORS ☞495(6)—ACCOUNTING AND SETTLEMENT—COMMISSIONS.

An executor's commissions cannot be allowed upon specific legacies.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 2102, 2103; Dec. Dig. ☞495(6).]

12. EXECUTORS AND ADMINISTRATORS ☞495(1)—ACCOUNTING AND SETTLEMENT—COMMISSIONS.

An executor's commissions cannot be allowed upon property lost or destroyed.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. § 2090; Dec. Dig. ☞495(1).]

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

13. EXECUTORS AND ADMINISTRATORS ⬅495(1)—ACCOUNTING AND SETTLEMENT COMMISSIONS.

An executor's commissions cannot be allowed upon money borrowed by the estate which did not increase the corpus of the estate.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. § 2090; Dec. Dig. ⬅495(1).]

Kellogg, P. J., and Howard, J., dissenting.

Appeal from Surrogate's Court, Saratoga County.

Proceedings for accounting by Willard Lester, as executor and trustee under the will of A. Gerald Hull, deceased. From decrees on intermediate and final accounts Alma B. S. Johnson and another appeal. Modified and affirmed.

Argued before KELLOGG, P. J., and LYON, HOWARD, WOODWARD, and COCHRANE, JJ.

Hornblower, Miller, Potter & Earle, of New York City (Charles A. Boston, of New York City, of counsel), for appellant Johnson.

Ward B. Chamberlain, of New York City, for appellant Chamberlain.

Charles C. Lester, of Saratoga Springs (Edgar T. Brackett, of Saratoga Springs, of counsel), for respondent Lester.

LYON, J. A. Gerald Hull of the county of Saratoga in this state died in February, 1893. He left a will which was duly probated in the Surrogate's Court of that county in March, 1894, succeeding a contest as to testator's competency. He left no descendants. His wife had died in 1892. His sole heir at law and next of kin was one Sayre, a first cousin. The will, after making certain bequests, gave the remainder of testator's property to his executor, in trust, to receive the income therefrom and apply the same to the use and benefit of William R. and Leonora B. Strong, who were testator's father-in-law and mother-in-law, and devised and bequeathed the property remaining after the death of both to their daughter, the appellant Alma B. S. Johnson, who became of age in January, 1895. All said beneficiaries resided on a farm at Golden's Bridge, Westchester county, N. Y. The will named the respondent Willard Lester, Esq., executor and trustee, and gave him full power and authority to mortgage, lease, and sell any or all of the real estate. The estate of the testator consisted of both real and personal property. The personal property was of the value of $72,262.11, which included articles specifically bequeathed inventoried at $4,417.30. The real property consisted of testator's residence property at Saratoga Lake, known as "Arrowhead," a farm known as the "Katonah Farm," a property in Brooklyn, N. Y., and a strip of land in New York City having a frontage on Twenty-Sixth street of about 30 feet, and on Fifth avenue of 113 feet, upon which stood a portion of the Hotel Brunswick. The real estate of the testator was free from incumbrance, except the Hotel Brunswick property, upon which there was a mortgage of $151,000, and which was also subject to a lease executed by the testator in 1892 for the term of 200 years at the annual rental of $19,000.

The probate of the will was vigorously contested by the cousin, and pending the contest the respondent was appointed temporary administrator. The proponents were successful, and the will was admitted to probate. Immediately following this, an action was brought in the Supreme Court by the cousin to determine the validity of the probate. This action came to trial in January, 1895, and after the close of the evidence, and during the summing up, a settlement was effected by the parties, whereupon a judgment was entered confirming the probate.

Following the probate of the will and in the year 1895, the executor, in order to obtain moneys with which to pay indebtedness of the estate and expenses of administration, mortgaged the Hotel Brunswick property for $200,000, out of the proceeds of which he paid the prior mortgage of $151,000. Within a few years after the death of the testator the company operating the Hotel Brunswick became insolvent. The property soon thereafter becoming tenantless, and the executor being unable to lease it for any purpose, and being without funds of the estate with which to make the alterations necessary to render the property productive, borrowed money, and at an expense of approximately $48,000 transformed the building into stores and bachelor apartments, from which he ultimately received a gross income of upwards of $20,000 a year. Early in the year 1903, the executor conveyed the Hotel Brunswick property, pursuant to a contract of sale made by him in June, 1901, concerning the carrying out of which by the purchasers, serious complications had arisen, for the sum of $450,-000, the purchaser paying the executor $250,000, and taking title subject to the $200,000 mortgage.

William R. Strong, the life beneficiary, died in or about the month of January, 1901. In 1904 the executor filed an intermediate account, and later a supplemental account, of his proceedings as such executor and trustee. Upon the presentation to the said Surrogate's Court of said accounts and of the petition of said executor for an accounting, the then surrogate of said county, who was one of the law firm of C. S. & C. C. Lester, made and filed a certificate of his disqualification to sit as such surrogate. Thereupon jurisdiction of such proceedings vested in the county judge of said county as acting surrogate. Objections to the account were duly filed by the surviving life beneficiary of the trust, and by the appellant, and hearings were duly had before the acting surrogate. In 1906 Leonora B. Strong died, and George F. Chamberlain, her executor, was made a party to the proceedings. In November, 1910, the acting surrogate made his decision upon the accounting, and a decree was entered thereon. An appeal was thereupon taken by the residuary legatee, and by said Chamberlain as such executor, to this court. It appearing to us that subsequent to the commencement of the proceeding for an accounting, the remaining life tenant had died, and that the appellant Alma B. S. Johnson had become entitled to the corpus of the estate, this court, in December, 1912, remitted the proceeding to said Surrogate's Court, to the end that a final accounting should be had by said executor and trustee, awaiting which this court held in abeyance the determination of said appeal. Proceedings for such final accounting were thereupon instituted, ob-

jections interposed, the accounting duly had, and a decree entered thereon in March, 1915, from which an appeal has been taken to this court.

[1, 2] Thus, two appeals, one from the decree entered upon the intermediate accounting, and the other from the decree entered upon the final accounting, are before us for consideration. The bases of these appeals are chiefly allowances made by the Surrogate's Courts for payments made by the executor and trustee: First, to the real estate firm of Lester Bros. for services in connection with the leasing by the testator in 1892 of the Hotel Brunswick property; second, for payments made by the executor mainly to his father and two brothers for legal services aggregating about $42,000; and, third, for the sum allowed to respondent for commissions as executor and trustee upon the intermediate accounting. While complaint is made of the failure of the respondent to accept an offer of $7,500 for Arrowhead, which the respondent later sold for about $6,100, and of the refusal of the acting surrogate to surcharge respondent's account with the deficiency, the evidence is insufficient to establish breach of duty upon the part of the respondent. The offer made for the property was submitted by the respondent to the life beneficiary, William R. Strong, who advised requiring a larger cash payment. This the proposed purchaser was apparently unable to make, and it would appear that any offer made to the respondent for the property was withdrawn, and that the respondent thereafter sold the property for the largest sum obtainable. Complaint is also made by the appellant of the remodeling by the respondent of the Hotel Brunswick property, and of the refusal of the acting surrogate to surcharge respondent's account by reason thereof. In the handling of that property, the respondent was confronted with a difficult and embarrassing situation, and we are convinced that in view of all the complications, he acted in a reasonably prudent manner and for what he considered to be for the best interests of the estate in making the changes which he made in the property. To have done nothing with it would have left the property without the power of yielding any reasonable revenue, and would have resulted in its sale under foreclosure. Wisdom directed that the property should be made productive in order to preserve it, and the executor, in borrowing money and remodeling the building, acted, not only under the advice of competent persons, but in general with the evident approval of the life tenants and remainderman, and was thereby enabled to hold it until the opportunity came to sell it.

[3] First, as to the allowance of the claim of Lester Bros., a firm composed of the respondent and his brother, James W. Lester, for services in connection with leasing the Hotel Brunswick property, it appears that the lease was made to one Southgate, who for several years had been a tenant of the testator, and who, approaching the testator for a long lease of the Hotel Brunswick property, was referred by him to his lawyer, the respondent, who in the capacity of attorney for the testator negotiated the lease, which was executed by the testator in September, 1892. It was for the term of 200 years at an annual rental of $19,000, the lessee to pay the taxes, water rents, and assessments. For this service said firm presented a claim against the estate for $5,000. The claim was allowed by the acting surrogate

at $3,990, upon the basis that the claimants were acting as real es-- tate brokers and were entitled to commissions of 1 per cent. of the aggregate rental for a period of 21 years. It appears that the re- spondent spent a large portion of his time in the office of Lester Bros., where he did law business, including the examining of titles; that he drew two or three wills and other papers for the testator; and that it was in this office that he dictated the said lease of the Hotel Bruns- wick property, which was typewritten and then taken to the law office of C. S. & C. C. Lester, where it was engrossed by the clerk in that office. No charge for such services rendered to testator appeared upon the books of Lester Bros., although they contained an account of rentals of testator's property paid into that office, and deposited to the credit of testator. However, C. S. & C. C. Lester presented a claim against the estate of testator for $1,700 which the respondent paid, and which was later allowed by the surrogate. Such claim, so far as it related to services rendered in the making of said lease of the Brunswick Hotel property, in the compensation for which the re- spondent was entitled to share, was as follows:

"To services as general counsel from June 1, 1887 to February 6, 1893 (5 years 8 mos. at $300 per year) and attending to various special matter; ex- amining title to property purchased and drawing various legal papers includ- ing three wills; also for professional services in preparing and engrossing the present lease of the Brunswick Hotel property, drawing supplementary agree- ments, transfer of insurance, etc.,—$1,700."

We think that under the circumstances disclosed by the evidence the claimants were not entitled to commissions as brokers, and that the account of the executor should be surcharged with the sum of $3,990, with interest thereon from the time of the payment of the claim by the respondent on or about June 13, 1895.

[4] Second, as to the payments made by the respondent for legal services, the record shows that, in addition to the payment of $3,990 to the firm of Lester Bros., the following sums were paid by the re- spondent as executor and trustee to the firm of C. S. & C. C. Lester, and the survivors, for legal services, in addition to the amounts paid them by him as temporary administrator:

| | | |
|---|---|---|
| 1894 to Jan. 1895........ | Contest on probate ...................... | $ 7,500 |
| 1895, June, to 1896, May. | Supreme Court action to set aside probate.. | 8,000 |
| 1895 to 1898........... | Services ($1,000 of which related to Bruns- wick property in 1895) .................. | 1,290 |
| 1895 to 1897........... | Relating to Brunswick property ........... | 3,685 |
| 1899 to 1903, Jan. 22.... | Services in connection with sale and clearing title of Brunswick property ............. | 5,000 |
| 1898, June, to 1903, Dec. | Services, Brunswick property, and general services, about ........................ | 5,950 |
| | Services on intermediate accounting ....... | 7,500 |
| | Services on first appeal .................. | 2,500 |

$41,425

Of this sum about $12,500 was paid on account of legal services rendered in connection with the Brunswick Hotel property, and about $29,000 for general legal services.

[5] In order to obtain an understanding as to these payments, a brief review in a general way of the facts relating thereto as disclosed

by the voluminous record is necessary. Immediately following the death of the testator, the executor, who with his father, C. S. Lester, and his two brothers, C. C. Lester and James W. Lester, constituted the law firm of C. S. & C. C. Lester, retained his three copartners by written agreement to act as his attorneys·and counsel in respect of all business connected with said estate, agreeing to pay them a reasonable compensation for all such services, the executor not to share in the moneys received therefor. Upon the contest before the surrogate, other counsel were also retained; the books and papers of the testator were carefully gone over; frequent and numerous consultations of counsel were held; large numbers of witnesses were interviewed, and a most thorough and painstaking preparation of the case was made upon both the facts and the law. The counsel attended before the surrogate some 30 days, during 20 of which evidence was taken. On March 10, 1894, the surrogate overruled the objections, and admitted the will to probate. For the legal services in connection with such contest there was allowed by the surrogate to the various counsel for the proponent of the will the aggregate of $10,000, which allowances were paid by the respondent out of the funds of the estate, $7,500 of which was allowed and paid to the father and two brothers of the respondent. The surrogate had no jurisdiction to make such allowances in the decree of probate. However, they were considered and passed upon by the acting surrogate, upon this accounting, as he had authority to do. While the sums allowed were perhaps liberal, we think that, in view of the importance of the litigation, the amount of work done by counsel, and the successful result, we should not interfere with such allowance.

For the services upon the trial of the action to set aside the probate of the will and to have it declared null and void, the same counsel were employed, and also James W. Verbeck, and in addition Matthew Hale, Esq., who was retained at the request of the life beneficiaries. The trial was had in January, 1895, and continued for about 12 days. During the summing up by Mr. Hale, the case was announced as settled, the settlement having been arranged by the life beneficiaries without consultation with the attorneys. For the services of counsel in connection with such Supreme Court action, the surrogate made allowances aggregating $13,775, which have been paid by the respondent out of the funds of the estate, $8,000 of which was allowed and paid to the father and two brothers of the respondent. The trial of the same issues had been concluded only a few months before in Surrogate's Court, upon which trial and through the complete and laborious preparation therefor, the counsel had necessarily become thoroughly familiar with the evidence. We think that $5,000 would have been ample compensation for such services of the members of the Lester firm. As $5,400 was paid the said firm by the respondent May 22, 1896, and the remaining $2,600, with $827.23 interest thereon June 7, 1901, the account of the executor should be surcharged with $3,827.23, with interest thereon from June 7, 1901.

Regarding the payments made by the respondent to said law firm of approximately $12,500 on account of legal services in connection with the Brunswick Hotel property, it appears that said law firm ren-

dered a bill to the respondent for services and disbursements made between March, 1895, and March, 1898, of $1,290, $1,000 of which was for services rendered between May and December, 1895, in connection with the loan upon the Brunswick Hotel property made by the Title Guarantee & Trust Company, which company charged, and the respondent paid for its services in connection with the making of such loan, the sum of $1,500. It also appears that said firm rendered a bill for services and disbursements between November, 1895, and July, 1897, in relation to the Brunswick property of $3,875.52, $3,685 of which was for services, crediting thereon the sum of $250 paid February 9, 1897, and that the respondent paid them the balance of $3,625.52. The nature of the services rendered and the amounts charged are set forth in findings 43, 44, 45, 46, 48, and 57 to 71, inclusive.

In November, 1899, negotiations were commenced for the sale of the Brunswick property and the services detailed in finding 72 were rendered, and on January 22, 1903, the said property was sold for $450,000, subject to said mortgage of $200,000, for which services the Lester law firm charged the respondent, and he paid them, the sum of $5,000, January 5, 1903. Thereafter said firm presented a bill to the executor for services rendered from June, 1898, to January, 1904, for the sum of $6,302.16, which said executor paid on or before January 27, 1904. The nature of said services, as well as the amounts charged therefor, are stated in findings 73–77, inclusive, and 82–94, inclusive. Included in said bill of $6,302.16 was an item of $2,000 for general counsel furnished the respondent during the 6 years from January, 1898, to January, 1904.

[6, 7] An examination of the evidence and findings above referred to, and the bills presented for legal services on account of the Brunswick Hotel property of approximately $12,500, show that a considerable portion of such services was rendered in the discharge of duties which the respondent himself was fully competent to discharge, and which he was under legal obligation to perform. The respondent had been admitted to practice in the courts of the state of New York prior to 1880, and had been actively engaged in general law practice, and was a member of the real estate firm of Lester Bros., and was undoubtedly well qualified to pass upon many of the matters requiring simply the exercise of good business judgment in connection with handling the Brunswick Hotel property. As to many of such matters the respondent was not justified in incurring lawyer's bills for services rendered in their performance. An executor is not warranted in paying out moneys of the estate which he represents for the performance of duties which are purely executorial. He has no right to employ counsel at the expense of the estate to do what he himself should do, and for the doing of which he is compensated by his commissions. 11 R. C. L., § 261; Lucich v. Modin, 3 Nev. 93, 93 Am. Dec. 376; 18 Cyc. 282. The commissions are allowed an executor as compensation for his services in the execution of the trust. Cook v. Lowry, 95 N. Y. 114, approved Stevens v. Melcher, 152 N. Y. 551, 46 N. E. 965. Where an executor employs an attorney to perform services which devolve upon the executor to perform, the disbursements made on account thereof do not constitute a proper claim against the estate,

although contracted in good faith. Matter of Binghamton Trust Co., 87 App. Div. 26, 83 N. Y. Supp. 1068; Matter of Harbeck, 81 Hun, 26, 30 N. Y. Supp. 521, affirmed 145 N. Y. 648, 41 N. E. 89; Matter of O'Brien, 5 Misc. Rep. 136, 25 N. Y. Supp. 704.

We think that, in view of the nature of the duties performed by counsel in connection with the Brunswick Hotel property, the respondent should not have been allowed the full amount claimed to have been paid by him as legal services therefor, but that said amount should have been reduced $2,500, and that the account of the respondent should be surcharged with that sum, with interest thereon from January 27, 1904, the date of making the last payment thereon.

We also think that the said allowance of $2,000 for general counsel, included in the said bill of $6,302.16, should not have been approved, in view of the allowances made for general and specific services covering substantially the same period, and that the account of the respondent should be surcharged therewith, with interest thereon from the time of the payment thereof.

It appears that the respondent paid to his two counsel, for legal services on the contest over the intermediate accounting in which practically only questions of fact were involved, $15,000. We think that $10,000 would have been liberal payment for such service, and all that the respondent was justified in paying from the funds of the estate, and hence that the account of the respondent should be surcharged with the sum of $5,000, with interest thereon from December 1, 1910, the time of the payment of the last $5,000 of said sum.

Upon the appeal from the decree entered upon the intermediate accounting, the respondent employed two counsel, to whom he paid in the aggregate $3,500, $2,500 to his brother Charles C. Lester, Esq. We think that $1,500 was as large a sum as the respondent was justified in paying to his brother for counsel upon such appeal, and that the account of the respondent should be surcharged with $1,000, with interest thereon from February 1, 1913, the time of the payment thereof.

[8-13] We realize that it is often difficult for a reviewing court to appreciate fully the work done and the time expended by counsel in litigation of this character. However, we believe that the sums paid to the law firm of C. S. & C. C. Lester with which we have surcharged the account of the respondent, are demanded by the evidence, and that the sum of principal $29,597.97, which is approved of the total payments to that firm of $41,425 is sufficient to compensate them fully and liberally for the services performed and disbursements made by them. In passing upon the payments made by the respondent for legal services, we have gone carefully through the briefs and the voluminous record, and have taken into account the time occupied, the difficulty of the questions involved, the nature of the services rendered; the amount involved in the litigation, the professional standing of the respective counsel, and the result reached. The burden of proving the claim created by an executor for counsel fees or other expenses of administration rests upon him. He must show the justice of the claim, that it was necessary, and that it was of the value charged. The relationship existing between the respondent and the counsel should in-

crease, rather than lessen, the rigidity of the rule. Matter of Hosford, 27 App. Div. 427, 50 N. Y. Supp. 550; Matter of Peck, 79 App. Div. 296, 80 N. Y. Supp. 76; 10 N. Y. Ann. Cas. page 194, note.

We also believe that, disallowing the remaining sums aggregating $6,490, consisting of the sum of $3,990 retained by the real estate firm of Lester Bros. for drawing the lease of the Brunswick Hotel property, and $2,500, one-half of the $5,000 surcharged as paid upon the intermediate accounting, which one-half was for services other than those rendered by said firm, was also demanded by the evidence. To all the sums herein surcharged, interest has been added, as the estate has been deprived of the use of the money. It may be observed that the total amount paid the various counsel by respondent and approved by the surrogate's court amounted to the sum of $62,930.67.

Third. As to the commissions to which the respondent was entitled, the acting surrogate assumed a wrong basis of computation in granting an allowance of $7,200. While the decree made by the acting surrogate charges the executor with having received the sum of slightly upwards of $700,000, it shows that upwards of $313,000 represented moneys borrowed which did not increase the corpus of the estate except by the said sum of approximately $48,000, expended for so transforming the Hotel Brunswick property. To make up said allowances of commissions to the respondent, the surrogate allowed commissions for the moneys received from the sale of real estate; commissions upon the said sum of upwards of $313,000, borrowed by the respondent for the purpose of paying the debts, expenses of the estate, and improving the Brunswick property as herebefore stated; commissions upon specific legacies and upon property unsold, lost, or destroyed; and commissions upon the income from the property.

[11, 12] The acting surrogate erred in allowing commissions upon specific legacies and upon property lost or destroyed. Schenck v. Dart, 22 N. Y. 420; Matter of Whipple, 81 App. Div. 589, 81 N. Y. Supp. 393; Matter of Fisher, 93 App. Div. 186, 87 N. Y. Supp. 567.

[13] Regarding the allowance of commissions to executors it is said in Beard v. Beard, 140 N. Y. 260, 265, 35 N. E. 488, 489:

"We think the true rule for allowance of statutory commission is this: Trustees are entitled to commissions for receiving all moneys which constitute the corpus of the estate, and any additions thereto from increase of any kind, and thus the moneys upon which commissions are to be computed can never exceed the gross amount of the estate and its net income; and the moneys paid out upon which commissions may be computed are the moneys paid out of the estate for debts, expenses of administration, and to legatees or other beneficiaries, moneys which operate to diminish the estate as it exists in the hands of the trustees and pass out of and away from the estate. This rule excludes commissions upon investments and reinvestments and moneys disbursed and received in the conduct of a business carried on to produce net income. In the case of such business, the commissions are to be computed on the net income only which came to the corpus of the estate as an increase thereof."

See, also, Matter of Hayden, 54 Hun, 197, 7 N. Y. Supp. 313, affirmed 125 N. Y. 776, 27 N. E. 409.

The commissions to which the respondent was entitled were upon the moneys in his hands from the decree settling temporary administration; the net amount received from the personal property; the

amount received from the sale of real estate; the income received from the estate; and on the sum of $49,000, the difference between the amount of the mortgage at the time of the death of the testator and the amount to which it was increased.

The respective decrees, findings, and allowances of the Surrogate's Court should therefore be modified in accordance with this opinion, and, as so modified, affirmed.

While material reductions have been made in allowances to the respondent, material reductions demanded by the appellant have been refused. Each party having succeeded in part, no costs should be awarded.

WOODWARD and COCHRANE, JJ., concur. KELLOGG, P. J., and HOWARD, J., dissent.