In the Matter of the Estate of IDA C. POTTS, Deceased.

STEPHEN F. AVERY, as Executor, etc., of IDA C. POTTS, Deceased, Appellant; ALFRED BRUCE CHACE and Another, Doing Business under the Name of CHACE BROTHERS, and Others, Respondents.

Fourth Department, May 6, 1925.

Executors and administrators — attorneys' fees — proceedings under Surrogate's Court Act, § 231-a, to fix fees — rule governing amount — estate of $2,000,000 — services extended over two years — attorneys successfully defended action to break will covering $1,000,000 of estate — said litigation involved novel questions of law — attorneys were successful in tax proceedings — allowance of $80,000 not against weight of evidence — surrogate's decision is to be given same weight as in other proceedings — surrogate's decision is presumptively correct.

In determining the amount of compensation to be paid attorneys for an executor, the court should consider the time spent by the attorneys, the difficulties involved in the matters in which services were rendered, the nature of the services, the amount involved, the professional standing of the counsel and the results obtained. Items as to time actually spent in work on the affairs of the estate are not of much importance. It is the ability of the attorneys and their capacity and success in handling large and important matters and in commanding large fees therefor, the amount involved and the result obtained which are of prime importance in determining what constitutes a just and reasonable charge.

Accordingly, an allowance to three attorneys of $80,000 for services rendered the executor of the estate involved in this proceeding was not against the weight of the evidence, since it appears that the estate amounted to nearly $2,000,000; that while the attorneys may not have been outstanding leaders of the bar, they are able members thereof and successfully defended a litigation instituted for the purpose of breaking the will as to a devise covering more than $1,000,000; that they were successful in Federal and State tax proceedings and in tax proceedings in thirteen foreign States; that they were engaged more or less continuously in the affairs of the estate for over two years; and that testimony relating to the value of their services placed the value thereof at from $50,000 to $125,000.

The weight to be given by the Appellate Division to the decision of the surrogate in proceedings instituted under section 231-a of the Surrogate's Court Act is the same as that given to a decision in any other proceeding, and the presumption is that the determination by the surrogate is correct.

APPEAL by Stephen F. Avery, as executor, etc., from a decree of the Surrogate's Court of the county of Columbia, entered in the office of said Surrogate's Court on the 27th day of June, 1924, fixing the compensation of the petitioners herein; also from an order of said Surrogate's Court, entered in said office on the 7th day of July, 1924, denying the executor's motion to vacate said decree and that a decision in writing be filed herein, and also an order, entered in said office on the 21st day of July, 1924, denying the executor's motion to resettle said decree on the ground that said decree did not recite nor show the making or filing of any decision herein.

This appeal was transferred from the Third Department of the Appellate Division to the Fourth Department. (See 213 App. Div. 840.)

*Daniel V. McNamee,* for the appellant.

*John L. Crandell,* for the respondents.

HUBBS, P. J.:

This is an appeal from a decree of the surrogate allowing claimants' claim for attorney fees at $80,000, of which amount the executor had paid $50,000.

Ida C. Potts died on November 19, 1921, leaving a will. Stephen F. Avery and two others were named as executors, one of whom died before the testatrix. Another, Fred B. Horton, died in June, 1922, leaving Avery as sole surviving executor. On November 21, 1921, two days after the death of the testatrix, Chace Brothers and R. N. Herzberg of Hudson, N. Y., were retained by the executors as attorneys in the management of the estate. The executors insisted on having at all times the joint services and advice of both of the Chace Brothers and of Mr. Herzberg. The estate amounted to nearly $2,000,000. The claimants rendered various services from November 21, 1921, until about January, 1924, a period of over two years. A condensed detailed statement of services rendered is contained in the brief of the appellant. It seems to be conceded that such statement is fair. It would serve no useful purpose to recite the details of the services. It is sufficient to note that many important matters arose requiring the almost constant attention of the attorneys for the executors. Under the 26th clause of the will the residuary estate of over $1,000,000 was devised to a hospital to be thereafter incorporated: An action was commenced by the

next of kin to declare this provision of the will void. If that action had been successful it would have practically frustrated the entire scheme of the testatrix in disposing of her property and would have resulted in diverting over $1,000,000 from the purpose which the testatrix had in mind. The litigation was of very great importance and involved new and interesting questions of law. In fact, Mr. Justice H. T. KELLOGG, writing for the Appellate Division on the appeal to that court in 205 Appellate Division, at page 150, said that the question involved on that appeal was an open question in this State. Upon the trial before the surrogate the claimants were successful in establishing the validity of the 26th clause, but were unsuccessful as to the question of the income upon the fund provided for in that clause, the surrogate holding that the income on the fund prior to the organization of the corporation did not follow the fund. In the Appellate Division the claimants were successful upon both those questions and the decision of the Appellate Division was affirmed in the Court of Appeals (236 N. Y. 658). The importance of that litigation cannot be minimized.

There were also tax proceedings which were of considerable importance, involving the State and Federal taxes and the taxes in thirteen foreign States. So far as appears from the record, the services rendered by the claimants were entirely satisfactory and successful. It is undoubtedly true that they were greatly impressed with the magnitude of the matters intrusted to their care and exaggerated the importance of various minor matters.

The executor paid them on account from time to time the sum of $50,000 and finally refused to pay more, their services were terminated and this proceeding was commenced under section 231-a of the Surrogate's Court Act (as added by Laws of 1923, chap. 526) to have their claim for services adjusted by the surrogate. He fixed the value of the services at $80,000 and the executor has appealed.

It may be well to restate the principles governing the fixing of attorney fees by the courts. They are familiar rules but are troublesome in application.

The burden of proof was on the claimants to establish the reasonableness of the claim and the value of the services rendered. (*Matter of Lester,* 172 App. Div. 509, 520.)

No allowance can be made for executorial services rendered as the executor is compensated for such services. (*Matter of Lester, supra,* 519; *Matter of Brodbeck,* 123 Misc. 743.)

The application of that rule is always beset with difficulties, as it is very difficult to draw the line between executorial services and legal services. A liberal rule should be applied where an executor has honestly sought and availed himself of the advice of counsel

in matters connected with the handling and settlement of an estate.

In general the court, in determining the justice and reasonableness of an attorney's claim for services, should consider the time spent, the difficulties involved in the matters in which the services were rendered, the nature of the services, the amount involved, the professional standing of the counsel, and the results obtained. (*Matter of Lester, supra,* 520; *Schlesinger* v. *Dunne,* 36 Misc. 529; *Matter of Sewell,* 32 id. 604; *Randall* v. *Packard,* 142 N. Y. 47; 6 C. J. 750.)

The value of an attorney's services cannot be limited to " specified and detailed bills of particulars with a specified amount for each item, as in the case of goods sold, or mere manual services rendered." (*Matter of Sewell, supra,* 607.)

That is necessarily so, for the real value of an attorney's services may be the result of his thought about the legal questions involved, while away from his office, at home, or elsewhere. An idea thought out in bed at night may be the most valuable part of an attorney's services, and may constitute a solution of the vital question involved in a litigation.

The standard by which the value of such services is measured is, however, the fair and reasonable value of the services rendered after considering the various elements referred to. I do not think items as to time actually employed in work on the case are of much importance. It is the ability of the attorney and his capacity and success in handling large and important matters and in commanding large fees therefor, the amount involved and the result obtained, which are of prime importance in determining what constitutes a just and reasonable charge.

In this case if the executor had retained counsel whose ability and success had placed them in the front ranks of their profession, I think no one would question a claim which they might have filed for the same amount allowed in this case. The amount claimed in this case would not be unusual or exorbitant if made by attorneys of such standing who, by reason of ability and success, had been able to build up a practice which enabled them to command large fees.

The executor herein is an attorney residing in a small place. He had been in the habit, when he had a case to try or a matter of importance to him, to retain Chace Brothers to handle it for him. He, therefore, knew them well and knew about their ability to handle this estate. No doubt he also knew the standing and ability of Mr. Herzberg.

The counsel for the appellant conceded on the argument that the

claimants were entitled to $50,000. The surrogate has allowed $80,000. It would be unwise for us to attempt to vary that amount. The evidence presents a fair question of fact. The testimony of the experts as to the value of the services varies from $125,000, testified to by Judge LeBoeuf, to $50,000 testified to by Judge Chester and Judge Rudd.

The only real question here is whether the amount allowed is against the weight of the evidence. When we consider that some of the witnesses for claimants testified that they based their opinion in part upon the standing, character, experience and ability of the claimants, it is hard to see how we would be justified in reversing the decree as against the weight of the evidence. Judge LeBoeuf said: " I am familiar also with the work which has been done by Chace Brothers and Mr. Herzberg from seeing what they did when I was holding court down here in Columbia County and other times at Special Term and other times in Court * * * and my knowledge of the persons who rendered the services." Mr. Mack testified to the same effect; also Mr. Browning.

Very little help can be obtained from an examination of the cases. In *Matter of Van Cortlandt* (118 Misc. 539) Surrogate SLATER allowed an attorney fee of $35,000. In *Matter of Ketcham* (199 App. Div. 244) the Second Department allowed Ex-Surrogate Ketcham $50,000 for services as trial counsel in a will contest involving $1,000,000. The trial lasted two weeks. He was retained April tenth, and the trial commenced June sixth. His services extended over a period of about two months. The fee there allowed was very much larger in proportion than the fee allowed in this case.

Section 231-a of the Surrogate's Court Act is new and there are no decisions reported which indicate the weight to be given on appeal to the surrogate's finding. I assume that the same rule applies as on an appeal from any other decision made by a surrogate. We undoubtedly have jurisdiction to make a new decision, varying the amount, but a presumption exists in favor of the surrogate's decision, the same as in favor of a general verdict of a jury. (Surrogate's Court Act, § 71.)

The counsel for the appellant stated on the argument that he did not urge the appeal from the intermediate orders; that the appeal was taken to save his rights in this court. The notice of appeal refers to the decree as finally made. I think the question presented by the appeal from the intermediate orders does not require consideration.

I advise that the decree be affirmed, with costs.

CLARK, DAVIS, SEARS and TAYLOR, JJ., concur.

Decree affirmed, with costs.