In the Matter of the Judicial Settlement of the Account and Supplemental Account of THE ADIRONDACK NATIONAL BANK AND TRUST COMPANY, as Surviving Executor, etc., of PHELPS SMITH, Deceased.

PAUL SMITH'S COLLEGE OF ARTS AND SCIENCES, Residuary Legatee, Appellant; THE ADIRONDACK NATIONAL BANK AND TRUST COMPANY, as Surviving Executor, etc., of PHELPS SMITH, Deceased, Respondent.

Third Department, March 13, 1940.

*Harry P. Kehoe, Jeremiah W. Davern* and *William S. Crapser*, for the appellant.

*F. Ferris Hewitt* [*John T. DeGraff* of counsel], for the respondent.

SCHENCK, J.   This is an appeal by Paul Smith's College of Arts and Sciences, residuary legatee under the last will and testament of Phelps Smith, from a decree of the Surrogate's Court, Franklin county.   The appeal is solely from so much of the decree as provides for an allowance and payment to F. Ferris Hewitt of the sum of $35,000 as compensation and fees for services as attorney for the surviving executor, The Adirondack National Bank and Trust Company.   No appeal has been taken by the executor and the only questions to be here reviewed are (1) the jurisdiction of the surrogate to fix and determine the value of the services of Mr. Hewitt as attorney for the surviving executor, and (2) whether or not the amount allowed was excessive and an abuse of discretion vested in the surrogate.

Decedent died January 17, 1937, leaving a last will and testament which was admitted to probate and letters issued to John M. Cantwell, an attorney of Malone, and the Adirondack National Bank and Trust Company of Saranac Lake.   Upon the probate of the will, F. Ferris Hewitt appeared as attorney for the corporate executor, and Cantwell & Cantwell appeared as attorneys for John M. Cantwell.   Upon the death of Mr. Cantwell, which occurred on or about the 12th day of August, 1937, the bank continued as surviving executor and from that time has been represented by Mr. Hewitt, as sole attorney of record,

On March 9, 1938, the bank, as surviving executor, filed a final account of proceedings and a citation issued at that time. Upon the return of the citation, the next of kin of the deceased filed a petition praying for a construction of the will, which petition was granted and a citation thereon issued. The will was construed in favor of the executor and a decree entered holding that the provisions of the will were valid. From this decree no appeal has been taken.

The account filed by the executor sets forth that no fees or allowances had been paid to Mr. Hewitt or to the firm of Cantwell & Cantwell, attorneys, which had represented Mr. John M. Cantwell until the time of his death, and that they were entitled to compensation, the amount to be determined by the surrogate. The citation directed the appellant college to show cause why the account should not be judicially settled and allowed and why the amount of fees and allowances to the attorneys for the executors should not be determined. The surviving executor also prayed in the petition for a citation directed to all persons interested in the estate to appear before the surrogate upon the judicial settlement of the accounts and the application for fees and allowances to attorneys and appraisers.

Subsequently, and after the entry of the decree in the proceeding for the construction of the will, the executor filed a petition setting forth that Mr. Hewitt and Cantwell & Cantwell had appeared in the construction proceeding but had received no compensation for their services and asked that the same be determined by the court. The petition asked further that the executor be granted permission to file a supplemental account and that a citation issue to all persons interested to show cause why such supplemental account, together with the final account theretofore filed, should not be judicially settled and allowed. Upon said petition an order was entered directing a citation issue to the appellant college to show cause why allowances to the attorneys for services rendered should not be determined and allowed, and the citation issued thereon also directed the appellant college to show cause why such allowances should not be determined and allowed. Upon the return of the citation on the supplemental account, the appellant college appeared by counsel and at that time the surrogate made a partial allowance of $25,000, each, to Cantwell & Cantwell and Mr. Hewitt. At that time the court asked if there were any objections to the allowances and the then attorney for the appellant college answered " No." The partial allowances were made by the surrogate December 12, 1938. Subsequently a new set of attorneys appeared for the appellant college and filed objection

to the allowances, the reason given being that the court had no jurisdiction to make the same.

The first question to be determined is whether or not the surrogate had jurisdiction to make these allowances.

Section 231-a of the Surrogate's Court Act provides:

" At any time during the administration of an estate, and irrespective of the pendency of a particular proceeding, the surrogate shall have power to hear an application for and to fix and determine the compensation of an attorney for services rendered to an estate  *   *   *.

" Such proceeding shall be instituted by petition of a representative of the estate, or a person interested  *   *   *.  Notice of the application shall be given in such manner as the surrogate may direct."

This section allows the surrogate at any time upon such notice as he may direct to fix allowances and compensation for attorneys. It relates to the fixation of the reasonable amount to be paid to an attorney in those cases where compensation has not been fixed by agreement to which all interested persons were parties.  The determination when made establishes the sum which may properly be paid from the assets.  (*Matter of Matheson*, 265 N. Y. 81, at p. 85.)  In other words, the section gives the court power to at any time during the administration of the estate hear an application for and determine the compensation of attorneys for services rendered to the representative of the estate.  (*Matter of Rosenberg*, 213 App. Div. 167.)

Clearly, there was a full compliance with the provisions of section 231-a of the Surrogate's Court Act.  That the petition was for an accounting as well as for the fixation of fees and allowances is of no consequence.  Two separate petitions could serve no useful purpose, especially in view of the wording of the section which provides that " at any time during the administration of an estate, and irrespective of the pendency of a particular proceeding, the surrogate shall have power to hear an application for and to fix and determine the compensation."

" A separate hearing would only cause added expense to the estate and to the objectants, and would serve no useful purpose. Everyone has been cited in the accounting proceeding and has notice of the unpaid claim for counsel fee contained in the account. No more formal notice of such application is made by bringing it separately under the provisions of Section 231-a of the Surrogate's Court Act.  There seems to be no valid objection to the fixing of the attorney's fee in the accounting proceeding." (*Matter of Kaplan*, 139 Misc. 414; *Matter of Bloomingdale*, 169 id. 968.)

Since the surrogate had the jurisdiction to pass upon the allowances under the provisions of section 231-a, the remaining question here presented is, Was the amount of $35,000 allowed to Mr. Hewitt excessive, thus constituting an abuse of discretion?

The amount of the estate as fixed by the appraisers was upwards of $2,500,000. By stipulation it was reduced to $1,749,000. Mr. John M. Cantwell, coexecutor under the will, carried on for a period of about six months following testator's death, in January, 1937. Mr. Hewitt has represented the executor bank from the time of the probate of the will to the present time. The executors apparently agreed to accept as commissions the sum of $35,000, each, one-half commissions being paid to Mr. John M. Cantwell, amounting to $17,500, and full commissions to the executor bank. The surrogate has awarded to Messrs. Cantwell & Cantwell for legal services rendered Mr. John M. Cantwell, as executor, the sum of $35,000. Apparently, the appellant college is satisfied with this allowance.

Mr. Hewitt has filed a statement setting forth the services which he claims to have rendered. He was sworn in his own behalf and gave testimony as to his activities in the interest of the estate. He submitted himself to examination and counsel for the appellant college reserved the right to offer expert testimony as to the value of his services, and although he was cross-examined by the attorney for the appellant college, no expert testimony was offered.

The decree of the surrogate upon the trial of an issue of fact has the same effect as the general verdict of a jury (Surr. Ct. Act, § 71), and the presumption is in favor of the surrogate's decision, the same as in favor of a general verdict of a jury. (*Matter of Potts*, 213 App. Div. 63.)

With all of the evidence before him, it may not be found that the surrogate abused his discretion. There was ample evidence to sustain the findings.

The decree appealed from should be affirmed.

BLISS and FOSTER, JJ., concur; HILL, P. J., and HEFFERNAN, J., dissent, upon the following grounds: The surrogate had no jurisdiction to fix the fees on the record before us. Even if jurisdiction be conceded, the fees as fixed are excessive.

Decree affirmed.