In the Matter of the Estate of JOSEPH LEWI, Deceased.

Surrogate's Court, Schenectady County, June 3, 1950.

*Henry W. Holzman* for Sadie F. Lewi, as executrix of Joseph Lewi, deceased, petitioner.

*Del B. Salmon,* respondent in person.

CAMPBELL, S. This proceeding was commenced by Sadie Fowl Lewi, widow and sole executrix of the last will and testament of Joseph Lewi, deceased, to fix and determine the compensation of Del B. Salmon, Esq., attorney and counselor at law, who instituted the probate proceedings.

Testator was survived by his widow and a minor son and because of the infancy of the child, a citation was issued from this court and duly served upon the child.

Several days before the return date of the citation, Mr. Salmon was notified by the executrix and her present attorneys, Kaiser, Holzman & Justin, that his services were no longer required and that the said firm of Kaiser, Holzman & Justin would represent the executrix in all estate proceedings in the future.

The will was duly admitted to probate on November 14, 1949, and this proceeding was commenced by the petition of the executrix, verified November 7, 1949.

Mr. Salmon had prepared all the probate papers and had obtained jurisdiction of all persons interested in the estate. In other words, he had performed all the work up to that time for the admission of the will to probate and had obtained the renunciation of the coexecutor, Mark I. Lewi, on November 2, 1949. This renunciation was executed by the coexecutor in Houston, Texas, and was duly filed in this court two days later.

Mr. Salmon interposed his answer, verified December 6, 1949, and subsequently counsel stipulated in open court to submit this matter on affidavits for the consideration and decision of this court.

Testator died in the county of Schenectady on October 26, 1949. His will was dated April 11, 1938. Mr. Salmon was one of the two subscribing witnesses to the will.

Mr. Salmon sets forth in his affidavit that he has been a practicing attorney of this State for '' more than forty-five years '' and that he rendered the services in connection with the probate of the will as set forth in detail in his statement attached to the answer to the petition herein. He asks the court to fix his fee at $1,000; that he have costs for $100, and that his disbursements amounting to $9.50 be allowed.

Present counsel for the executrix asserts that a reasonable fee for Mr. Salmon '' should not be in excess of $250.00.'' In the transfer tax proceeding, present counsel for the executrix states that their legal fee for services is $1,000 and $49.99 for miscellaneous expenses.

In determining what is a reasonable attorney's fee for Mr. Salmon, the court notes that through his work, efforts and skill, he was able to obtain from Mark I. Lewi, the coexecutor named in the will, his renunciation which left the widow the sole executrix. In the opinion of this court, this constituted a very valuable service to the estate and precluded the payment of one half

of the executors' commissions to Mark I. Lewi. From Mr. Salmon's affidavit, it appears this accomplishment was not an easy legal task. If this effort on Mr. Salmon's part had not been successful, the administration of this estate might have been hampered seriously.

The New York State estate tax proceeding indicates a gross estate of $71,059 and a net estate of $68,153.09. Of the net estate, $31,000 was insurance on the life of testator payable to the sole executrix and widow, Sadie Fowl Lewi, and equity in real property of $4,581.50 held by decedent and his widow as tenants by the entirety.

Testator's will leaves the entire individual estate to his said widow except $500 to a brother, Mark I. Lewi, and certain articles of jewelry bequeathed to testator's son.

One of the leading authorities in this State on the question at bar, is *Matter of Potts*. This case originated in Surrogate's Court, Columbia county, and is reported in 123 Miscellaneous 346, unanimously affirmed in 213 Appellate Division 59, and again unanimously affirmed by the Court of Appeals in 241 New York 593, without opinion.

The opinion in the Appellate Division was written by Presiding Justice HUBBS and reads, in part, as follows (pp. 61–62):

" It may be well to restate the principles governing the fixing of attorney fees by the courts. They are familiar rules but are troublesome in application.

" The burden of proof was on the claimants to establish the reasonableness of the claim and the value of the services rendered. (*Matter of Lester,* 172 App. Div. 509, 520.)

" No allowance can be made for executorial services rendered as the executor is compensated for such services. (*Matter of Lester, supra,* 519; *Matter of Brodbeck,* 123 Misc. 743.)

" The application of that rule is always beset with difficulties, as it is very difficult to draw the line between executorial services and legal services. A liberal rule should be applied where an executor has honestly sought and availed himself of the advice of counsel in matters connected with the handling and settlement of an estate.

" In general the court, in determining the justice and reasonableness of an attorney's claim for services, should consider the time spent, the difficulties involved in the matters in which the services were rendered, the nature of the services, the amount involved, the professional standing of the counsel, and the results obtained. (*Matter of Lester, supra.* 520; *Schle-*

*singer* v. *Dunne,* 36 Misc. 529; *Matter of Sewell,* 32 id. 604; *Randall* v. *Packard,* 142 N. Y. 47; 6 C. J. 750.)

"The value of an attorney's services cannot be limited to 'specified and detailed bills of particulars with a specified amount for each item, as in the case of goods sold, or mere manual services rendered.' (*Matter of Sewell, supra,* 607.)

"That is necessarily so, for the real value of an attorney's services may be the result of his thought about the legal questions involved, while away from his office, at home, or elsewhere. An idea thought out in bed at night may be the most valuable part of an attorney's services, and may constitute a solution of the vital question involved in a litigation.

"The standard by which the value of such services is measured is, however, the fair and reasonable value of the services rendered after considering the various elements referred to. I do not think items as to time actually employed in work on the case are of much importance. It is the ability of the attorney and his capacity and success in handling large and important matters and in commanding large fees therefor, the amount involved and the result obtained, which are of prime importance in determining what constitutes a just and reasonable charge."

Almost fifty years ago, *Matter of Sewell* (32 Misc. 604) was decided in Erie County Surrogate's Court, which stated the elements to be considered in the fixation of an attorney's fee and that such consideration should not be limited to a bill of particulars. At page 607, the court said: "All admitted what is well known, that the value of legal services is, to a considerable extent, a matter of opinion, but that in arriving at the same, various well-defined elements must be considered, such as in this case, the amount involved in the estate; the character and amount of work done; the time occupied in its performance; the results attained, and the standing and reputation of the attorneys performing the services, and the courts have uniformly refused to limit attorney's fees to specified and detailed bills of particulars with a specified amount for each item, as in the case of goods sold, or mere manual services rendered. *Randall* v. *Packard,* 142 N. Y. 47; *Rutherford* v. *Soop,* 85 Hun, 119; *Bangs* v. *Ocean Nat. Bank,* 53 How. Pr. 51; *Donohoe* v. *Pomeroy,* 47 N. Y. St. Repr. 74; *Mellen* v. *Mellen,* 43 id. 801; *Thompson* v. *Knickerbocker Ice Co.,* 16 id. 738."

In *Matter of Pagnotta* (161 Misc. 415, 418) former Surrogate WINGATE states:

"It is primary that a client possesses the unqualified right to change attorneys at any time he sees fit and for any reason, good, bad or indifferent, which may appeal to him. (*Martin v. Camp*, 219 N. Y. 170, 174; *Robinson v. Rogers*, 237 id. 467, 470; *Matter of Krooks*, 257 id. 329, 331; *Matter of Tillman*, 259 id. 133, 135; *Matter of Lydig*, 262 id. 408, 409.)

"Upon the exercise of such right by the client, any agreement respecting compensation is wholly abrogated and the compensation of the attorney is determinable solely on the basis of *quantum meruit.* (*Matter of Tillman*, 259 N. Y. 133, 135; *Matter of Montgomery*, 246 App. Div. 495, 497.)"

In *Matter of Mackenzie* (155 Misc. 822, 825) Surrogate WINGATE discusses the elements to be considered in fixing a fee, and states: "The factors possessing cogency in any such evaluation have been repeatedly stated by this and other courts, and include the standing of the attorney, the amount of time necessarily occupied on behalf of the client, the result attained and the amount involved in the controversy. (*Matter of Spanier*, 148 Misc. 879, 883, affd., 241 App. Div. 615; *Matter of Sharp*, 140 Misc. 427, 433.) (See, also, *Matter of Burroughs*, 155 Misc. 237, 239.)"

Fees which attorneys request are not uniform throughout the State but vary according to the cost of living in different localities and the necessary expenses in maintaining a law office and all its incidentals. Then, too, the cost of legal work at the present time has increased with the higher standard of living.

This was recognized by the Schenectady County Bar Association which, on April 15, 1948, adopted a minimum fee schedule which states: "Complete legal services in administration of estates 5% of the gross estate up to $50,000.00, and 3% on the excess over and above $50,000.00."

This pronouncement also states that "the schedule hereinafter presented covers only minimum fees under ordinary and usual conditions, and does not attempt to meet complicated or unusual circumstances."

Careful consideration has been given by this court to the matter herein presented. All the records in this estate, including, of course, the petition of the executrix and the affidavits of both attorneys, have been studied and scrutinized conscientiously and many cases examined in order to reach a fair, just and equitable conclusion of the issue at bar.

104

Therefore, this court is of the opinion that attorney Salmon is entitled to compensation payable from the estate in the sum of $750 as and for his legal fee, and in addition thereto his disbursements, as set forth in his affidavit verified April 24, 1950, in the sum of $9.50, making a total of $759.50. His request for costs is denied. Costs will not be allowed either party.

Enter order accordingly.