OPINION OF THE COURT
Herman Cahn, J.
*494 Defendant Breed, Abbott & Morgan (BAM) moves for an order granting it partial summary judgment against plaintiffs Charles Gibbs and Robert Sheehan on the third and ninth affirmative defenses and counterclaims. Plaintiffs cross-move for an order granting summary judgment dismissing the third and ninth defenses and counterclaims.
BAM is a law partnership existing under New York law. Gibbs was a partner from February 1, 1973 until July 11, 1991. Sheehan was a partner from June 1983 until July 1991. After leaving BAM, plaintiffs joined the law firm of Chadbourne & Parke (C & P).
THE THIRD COUNTERCLAIM
The third counterclaim makes vague allegations of breach of fiduciary duty, including solicitation of clients, making misrepresentations to clients concerning the financial status of BAM, misappropriation of BAM’s property for the use of C & P, and delay in submission of petitions for commissions to the Surrogate’s Court until after plaintiffs ceased to be BAM partners. Although the pleading fails to apprise the court or the parties of the precise nature of the claim, defendant’s memorandum of law describes a claim arising out of Gibbs’ service as an executor for an estate. Since both parties have extensively briefed the issue, the court will adjudicate the claim as if the pleading were complete.
BAM contends that Gibbs is liable to it for $287,000 of claimed unpaid time charges, in connection with the estate of Pamela Cole and the residuary trust created pursuant to the will of Pamela Cole by reason of Gibbs being the co-executor of the Cole estate when BAM applied for an allowance of its fees in connection therewith in Surrogate’s Court. Gibbs took the position that the fee requested exceeded the "fair and reasonable” fee to which BAM was entitled, and that certain disbursements for which reimbursement was requested in Surrogate’s Court by BAM, were not recoverable under governing law. It is further claimed that Gibbs objected tó a settlement of the BAM fee application proposed by the estate’s beneficiaries and accepted by BAM and C & P.
BAM alleges that Gibbs is liable for $180,000 in executor’s commissions which he received for serving as executor of the Cole estate. This sum includes $80,000 in commissions that Gibbs received in 1992 after he left BAM, and $100,000 which, according to Gibbs, he has yet to receive.
Pamela Cole died in 1987. Shortly thereafter, while Gibbs was a BAM partner, the three executors of her estate, Robert *495 Brimberg, Robert Dumser and Gibbs, retained BAM to represent the estate. (Brimberg died in April 1993 and Dumser died in June 1995.) Gibbs states that on behalf of BAM, he agreed with the other executors that BAM’s fee was to be "fair and reasonable” as provided by law.
In July 1991, the Cole executors and trustees, acting on the decision of Brimberg and Dumser, discharged BAM as counsel except with respect to two suits then pending. One, the Pound Ridge matter, was pending in Surrogate’s Court and the other, GSL, was pending in this court. Subsequently, the Cole executors discharged BAM in the Pound Ridge action. BAM later resigned as counsel in the GSL action.
In October 1992, BAM commenced a proceeding in the Surrogate’s Court under SCPA 2110 to fix its legal fees plus disbursements, in the amount of $1,271,200.01. This included $581,229.78, which had previously been paid to BAM by the estate, and $689,970.23, which was claimed to be a balance due. BAM sought recovery on a time basis, i.e., multiplying the actual number of hours reasonably and necessarily expended by BAM by the hourly rate charged by each attorney working on the matter. In its answer, the Cole estate objected to that amount of the fee sought which exceeded the "fair and reasonable value” of the services rendered. Ultimately, on January 23, 1996, a stipulation of settlement was entered into between counsel for BAM, C & P, successor executor Charles Bernheim, three residuary beneficiaries of the estate and the Attorney-General. The stipulation provided as follows: "After entry of the order described below, Breed Abbott will be paid the sum of $302,470.23 as full and final payment for its legal services and disbursements in-connection with or on behalf of the Estate, the Executors, the Trusts and Trustees. The fair and reasonable value of Breed Abbott’s legal services and disbursements in connection with the Estate * * * shall be fixed at the aggregate of* * * $302,470.23 and the sums previously paid to Breed, Abbott [$780,663.91 by that point].” (Emphasis added.)
Gibbs denies that he opposed the settlement. In any event, in January 1996, the Surrogate’s Court approved the settlement, finding in effect that the amounts previously paid to BAM and the additional sum of $302,470.23 were fair and reasonable.
Gibbs contends that there was never any agreement between BAM and the Cole executors for time charges, and that once BAM was discharged, it was entitled only to a quantum meruit recovery. Moreover, Gibbs contends that BAM has been paid *496 compensation to which it voluntarily agreed as "full and final payment”.
Section 17.1 of the BAM partnership agreement authorizes partners to act as fiduciaries, corporate officers and in similar capacities, provided that, with certain exceptions, their compensation be paid to the firm. The exceptions are set forth in section 17.2, and basically relates to the estates of a close member of the partner’s family, or spouse’s family. Section 17.3 reiterates that such fiduciary fees are to be paid to the firm "immediately upon receipt”.
Section 17.4 provides: "The requirements of Section 17.3 shall not apply to any Partner after his or her retirement. Upon the retirement of any Partner * * * the former Partner * * * shall be entitled to receive and to retain, or waive, all such fees or compensation which such former Partner * * * would be entitled to receive and retain as a matter of law thereafter, regardless of the time of his or her appointment or qualification in any such capacity and regardless of the period of time to which such compensation relates.”
Gibbs contends that by virtue of section 17.4, he is entitled to retain the $80,000 in executor’s commissions that he received in 1992, after he left BAM.
BAM’s claim, however, is based upon a claimed policy of the trusts and estates department of the firm that was first formulated by BAM partner Robert Bagdasarian sometime in 1987 (Bagdasarian policy). The Bagdasarian policy, according to BAM, required that where a firm partner acted as executor for an estate and the firm did not collect the full amount of its fees, the partner in question would make up the difference to the extent of his or her executor’s commissions. The purpose of the policy was to prevent a partner from enriching himself or herself at the expense of the firm. BAM argues that the policy has been generally applied, even by Gibbs.
BAM proffers a memorandum by Gibbs to BAM partner E.J. Ross, dated April 25, 1991, concerning certain estates, for which Ross was the executor. The memorandum states in part: "Every estate must pay time charges. If the Court allows less, then the executor must make up the difference to the extent of his commissions. The only exception is [the estate of] a partner who dies while a member of the firm. We do his estate without fee.”
Gibbs contends that since the Bagdasarian policy was never incorporated into the BAM partnership agreement, parol evi *497 dence is inadmissible to establish the existence of the policy. However, for reasons explained below, even if the Bagdasarian policy were held to constitute part of the BAM partnership agreement, public policy would bar its enforcement.
Code of Professional Responsibility DR 2-106 (22 NYCRR 1200.11) prohibits an attorney from collecting more than a reasonable fee. The mere expenditure of time is not sufficient to justify a particular fee (Matter of Potts, 213 App Div 59; see also, Matter of Cook, 41 AD2d 907, affd 33 NY2d 919). An attorney for a fiduciary has the same duty of undivided loyalty to the beneficiaries as the fiduciary himself (Matter of Bond & Mtge. Guar. Co., 303 NY 423; Matter of Clarke, 12 NY2d 183). Moreover, an executor has a duty of undivided loyalty to the estate (Matter of Curran, 203 Misc 956 [Sur Ct, Kings County]). Gibbs had an obligation, if he reasonably believed that the fees demanded by BAM from the Cole estate were excessive, to oppose the fee application. BAM contends that since there was a substitute executor for the Cole estate, Gibbs should have taken no position on its fee application but should have stepped aside and permitted the substitute executor to decide what position the estate should take. However, this would have constituted neglect of the duty he owed to the beneficiaries of the estate.
The Bagdasarian policy, if enforced, would place an attorney in a serious conflict. If Gibbs had supported BAM’s fee application, such fees, if excessive, would have been at the expense of the estate. On the other hand, if he opposed the fee application and BAM did not collect the full amount of the fees demanded, Gibbs would have been potentially liable, under the Bagdasarian policy, to pay BAM fees out of his commissions. Such a policy could have had an in terrorem effect on Gibbs’ ability, as executor, to properly evaluate BAM’s fee claim. Moreover, even though Gibbs was a partner of BAM, the obligation that BAM had as an attorney for the estate’s executors superseded any law partnership provision to the contrary. Thus, even though Gibbs’ action in opposing the fee application allegedly caused BAM to settle for a lesser fee rather than recovering the full amount of its time charges, Gibbs cannot be liable to BAM on a breach of fiduciary duty theory. Moreover, because of the conflict of interest referred to above, BAM is not entitled to recover out of Gibbs’ commission the additional estate fees claimed. The rule is well established that where a conflict of interest exists, compensation must be denied (Matter of Jones, 8 NY2d 24). Thus, to the extent that the third counterclaim arises out of the Cole matter, plaintiffs are entitled to sum *498 mary judgment. Since the allegations of the balance of the pleading should be separately stated and numbered (CPLR 3013), this court grants defendant leave to replead the balance of the third counterclaim, if it be so advised.
THE NINTH COUNTERCLAIM
The ninth counterclaim relates to various legal services allegedly earned by the firm on other matters regarding which Gibbs or Sheehan had acted as executors or guardians, and services provided by BAM to, and personal expenses provided for, Gibbs and Sheehan. Again, the claims are vague and are described in defendant’s memorandum of law rather than any pleading. However, since the parties have addressed the issues in their papers, the court will consider them.
BAM claims that Gibbs is obligated to pay $52,000 of fees received by him for serving as guardian ad litem in three separate proceedings in the Surrogate’s Court, New York County. Forty-five thousand dollars of said fees were admittedly paid to him after he retired from BAM. Gibbs claims that he never received the additional $7,000. In addition, BAM claims that Gibbs owes $15,000 in fees which were received by his New Jersey office in December 1991.
Prior to his retirement from BAM on July 11, 1991, Gibbs had been appointed executor and guardian ad litem in three proceedings in the Surrogate’s Court, New York County: (a) accounting proceeding — estate of Arthur Shaffer; (2) accounting proceeding for two trusts under the will of Louisa Barnard; (3) accounting proceeding — Bernice Gratz trust. Gibbs had not completed his duties under any of these guardianships and had not been awarded any fees by the courts prior to his retirement from BAM. Gibbs contends that under section 17.4 of the BAM partnership agreement, he was not obligated to pay to BAM any of said fees that he would receive after July 11, 1991 for these guardianships. However, in the expectation that he would be paid his claimed share of 1990 and 1991 earnings and his inventory interest in the firm, he consented to make the payments. Gibbs contends that BAM breached the agreement by failing to pay him the amounts in question. In the event that BAM is found to be in breach of its obligation, Gibbs might well be relieved of his obligation to pay fees to the firm (see generally, Melodies, Inc. v Mirabile, 7 AD2d 783 [3d Dept]).
The same is true with respect to BAM’s claim against plaintiff Robert Sheehan. BAM contends that upon his withdrawal from BAM, Sheehan agreed to pay BAM a percentage *499 of his executor’s commission from the Breed estate. Sheehan admits that he consented to make the payment but that his agreement to do so was based on the condition that he would be paid retirement benefits in accordance with the partnership agreement. In the event that BAM is found to have breached the partnership agreement by not paying those benefits, Sheehan might well not be liable to the firm for the commissions.
Summary judgment should not be granted to either party at this point, since factual issues remain to be resolved both as to the agreement relating to these matters between plaintiffs and defendant.
BAM contends that Gibbs is liable for fees collected on the estate of Francis Barton. The payments in question were made to Gibbs’ New Jersey office. Gibbs states that on the advice of counsel, he distributed the sum of $15,000 to himself as an offset against his retirement benefits. The question of fees in the Barton matter was before Judge Weiss in New Jersey Superior Court. It does not appear that the New Jersey court’s award to BAM of $100,000 precludes BAM from recovering the $15,000 claimed by Gibbs as a credit against retirement benefits. Since the question of retirement benefits has not been resolved, summary judgment shall not be awarded to either side.
Defendant is directed to serve an amendment to the ninth counterclaim to specify the precise nature of the legal services and expenses for which recovery is sought.
CONCLUSION
Accordingly, the motion is denied, and the cross motion is granted only to the extent that the portion of the third counterclaim which relates to the Cole fee application is hereby stricken.
Defendant is directed to serve an amended pleading, within 20 days after service of a copy of an order to be settled herein, separately stating the allegations in the third and ninth counterclaims.