■ In the Matter of the Estate of WILLIAM LANYI, Also Known as WILLIAM M. LANYI, Deceased. MELVIN M. KLEIN et al., Appellants.—In a proceeding to settle the account of a coexecutor of an estate, the coexecutor Melvin M. Klein, and the law firm of Hein, Waters & Klein, appeal, as limited by their brief, from so much of an order of the Surrogate's Court, Queens County (Laurino, S.), dated June 19, 1987, as reduced the legal fees requested by the law firm and Lincoln Harkow, of counsel to the law firm, and directed the law firm to reimburse the estate for legal fees received in excess thereof.

Ordered that the order is affirmed insofar as appealed from, without costs or disbursements.

Pursuant to the last will and testament of the decedent, William M. Lanyi, who died on March 14, 1984, Julio Morales was named as sole beneficiary and coexecutor of Lanyi's estate which was valued at approximately $363,000. The other coexecutor named was Melvin M. Klein, the attorney-draftsman of the decedent's will, who was also a subscribing witness and the supervisor of its execution. Another subscribing witness was Irwin Klein, Melvin Klein's son and law partner in the firm of Hein, Waters & Klein (hereinafter the Klein firm). After Lanyi's death, Morales contacted the firm which then filed a petition for probate and a petition for preliminary letters testamentary. Both applications were contested by the decedent's sister.

On December 30, 1986, the appellants filed an accounting pursuant to an administrative rule of the Queens County Surrogate's Court which requires the filing of such accounting within one year of the date of appointment of a fiduciary who is also an attorney. Based on the papers presented, the Surrogate ordered a hearing to determine the reasonableness of the requested legal fees involved.

At the hearing, Morales testified that he and the Klein firm had entered into three separate agreements with respect to legal fees. When the decedent's sister indicated that she was going to contest the will, the firm estimated that its fee would be $20,000, plus commissions. Preliminary letters testamentary were granted in June of 1984. After the court ordered an examination of the subscribing witnesses to the will, the firm retained Lincoln Harkow as litigation counsel in order to avoid a conflict of interest since Melvin Klein had drafted the will and both he and his son had been subscribing witnesses thereto.

Morales and the Klein firm then agreed to a contingency fee arrangement, but further agreed that its precise terms, including the percentage of recovery, would be decided after the matter was concluded. The decedent's sister thereafter withdrew her objections to the will, without receiving any money from the estate or Morales and the will was admitted to probate without a trial. After Lanyi's house was sold (the Klein firm handled the closing and related matters), Morales entered into another agreement with the firm pursuant to which he agreed to pay legal fees totaling $67,500. Morales testified that he believed that the fees requested were reason-

able and he submitted a release, receipt and waiver to that effect.

Due to Melvin Klein's temporary absence from the jurisdiction, Irwin Klein testified at the hearing and stated that the firm had not kept detailed time records of the work performed on behalf of the estate since it was not billing Morales on an hourly basis. Although he estimated that the firm and Harkow had spent at least 100 hours working on the litigation aspect of the case, he conceded that Harkow had performed 75% of the work. He further estimated that the firm had spent an additional 150 hours working on other aspects of the estate. An accountant and an investigator were also hired by the firm to assist in settling the estate. Klein further stated that pursuant to one of the agreements the firm had with Morales, Harkow was to receive $15,000 for services performed. However, schedules submitted in connection with a tax proceeding indicated that Harkow was to receive $12,500. Morales' receipt and release stated that Harkow had already been paid his fee. Harkow, however, testified that he had not yet been paid but expected to seek compensation in the amount of $7,500 to $8,000.

In his order dated June 19, 1987, the Surrogate determined that the fair and reasonable legal fee with regard to services performed by Harkow was $7,500. He also awarded a $10,000 legal fee to the Klein firm and statutory commissions in the amount of $14,467.13, but surcharged the firm the sum of $600 for accountants' fees and $511.76 for interest and penalties.

The appellants maintain that the Surrogate exceeded his authority in adopting an administrative rule mandating the filing of an accounting within one year of receipt of letters by all attorney/fiduciaries, especially as applied to this case, since Morales, the sole beneficiary and coexecutor, wished to settle the estate by filing a release, receipt and waiver. They further claim that the Surrogate improperly disregarded the contingency fee agreement which they had entered into with Morales and that, in any event, the amount of the legal fees requested was reasonable. We disagree with the appellants' arguments and affirm.

The Surrogate's adoption of an administrative rule mandating the filing of an accounting by all attorney/fiduciaries constitutes a proper exercise of his discretion to "make such rules for the conduct of business in [his] court" (SCPA 105, 2205; *Matter of Stalbe,* 130 Misc 2d 725). Moreover, after

considering the papers presented by the appellants, the Surrogate did not improvidently exercise his discretion in determining that it would be in the best interest of the estate to conduct a hearing to determine the reasonableness of the legal fees and commissions charged, notwithstanding the consent of Morales to the payment of such fees (SCPA 2110, 2307; *Matter of Schaich,* 55 AD2d 914, *lv denied* 42 NY2d 802; *Matter of Brehm,* 37 AD2d 95).

Although contingent fee retainer agreements are not per se improper in matters involving the administration of estates *(Matter of Peterson,* 257 App Div 449), agreements entered into between an attorney and his client, as a matter of public policy, are of special concern to courts. The burden of proving that the compensation agreement was reasonable rests with the attorney *(Matter of Krulish,* 130 AD2d 959). We find that the appellants have failed to meet their burden of proving the reasonableness of the fees requested.

"In general the court, in determining the justice and reasonableness of an attorney's claim for services, should consider the time spent, the difficulties involved in the matters in which the services were rendered, the nature of the services, the amount involved, the professional standing of the counsel, and the results obtained" *(Matter of Potts,* 213 App Div 59, 62, *affd* 241 NY 593; *Matter of Schmidt,* 134 AD2d 432). Additional factors to be considered are the customary fees charged by the Bar for similar services and the contingency or certainty of compensation *(see, Matter of Freeman,* 34 NY2d 1). "The cutting of [a] requested fee [is] a proper exercise of discretion and well within the mandate of SCPA 2110, which decrees that it is ultimately the court's responsibility to decide what constitutes reasonable compensation" *(Matter of Schaich, supra,* at 914).

The Surrogate did not abuse his discretion in reducing the requested legal fees following the accounting *(see, Matter of Zorek,* 131 AD2d 580; *Matter of Hertz,* 128 AD2d 780, *lv denied* 69 NY2d 613; *Matter of Moody,* 125 AD2d 673). The contingency fee agreement arranged by Melvin Klein, the attorney/draftsman/fiduciary/witness and supervisor of the will's execution, failed to fix the percentage of recovery at the time it was entered into *(Matter of De Graff, Foy, Conway & Holt-Harris v McKesson & Robbins,* 31 NY2d 862). Moreover, the fee arrangements between the parties were changed three times. The papers submitted contained conflicting information as to the sum to be paid to trial counsel and even as to whether or not he had already been paid. Although Morales

testified that he found the fees requested to be reasonable, it is questionable that his consent was informed.

After reviewing the papers submitted by the appellants, the Surrogate discovered a number of errors committed by the Klein firm in its handling of the estate. For example, the accounting prepared by the firm indicated that the decedent's real property was specifically devised although the residuary clause in the will did not so provide. Morales' written statement, which was attached to the accounting and which had also been prepared by the law firm, stated that the legal fees were paid from Morales' personal assets. However, since these fees had been paid out of the proceeds from the sale of the real property, the fees were actually paid from estate assets. In addition, the firm's late payment of taxes caused interest and penalties to be charged.

In light of the foregoing, the fees awarded to the appellants were reasonable. Brown, J. P., Lawrence, Eiber and Kooper, JJ., concur.