*503 OPINION OF THE COURT
Albert J. Emanuelli, S.
In this final executors’ accounting, petitioners ask that the court determine the fees of the several attorneys or firms of attorneys who have rendered services to the estate.
Decedent died in May of 1986, leaving an estate of approximately $900,000. Her husband Bernard died the previous month. The wills of decedent and her husband named the same beneficiaries and appointed the same fiduciaries. As a result, the two estates have been administered together for the most part.
Each of the two coexecutors named in decedent’s will hired his own attorney. Counsel initially determined a division of responsibility and agreed that their combined fee would be equal to that which would properly be charged by a single firm. Subsequent developments and delays in the administration of the estate have caused counsel to abandon that agreement as to fees.
Coexecutor Samuel Zinman, a nonbeneficiary of this estate, has been represented throughout the six years of the estate’s administration by the firm of Emmet, Marvin & Martin (hereinafter Emmet). Coexecutor Charles Mergentime, a son of decedent and one of two principal beneficiaries of the estate, was initially represented by the firm of Wolf, Haldenstein, Adler, Freeman & Herz (hereinafter Wolf). The Wolf firm was discharged by Mergentime in June of 1990. Walter Handel-man, Esq. has represented Charles Mergentime since being substituted for former counsel on June 11, 1990. The firm of Frank, Bernstein, Conaway & Goldman (hereinafter Frank) represented the estate before the United States Tax Court in regard to proceedings brought by the Internal Revenue Service challenging certain valuations and deductions included on the estate’s Federal estate tax return. Aside from Emmet, Wolf, Handelman and Frank, whose fees are to be fixed, the other interested party to this proceeding is Dian Fatula, a daughter of decedent and the other principal estate beneficiary.
In representing coexecutor Zinman and the estate, the Emmet firm prepared and filed the probate petition and assisted in marshalling and inventorying estate assets. Renunciations were filed, on behalf of the estate, of bequests made under decedent’s husband’s will resulting in an over-all reduction of Federal and State taxes in the two estates. Emmet *504 prepared and filed the tax proceeding in the United States Tax Court which followed an Internal Revenue Service audit of the Federal estate tax return. After filing, the Emmet firm was replaced by the Frank firm which ultimately settled the matter.
In October of 1986, Mergentime Corporation, a closely held company principally owned and controlled by Charles Mergentime, entered into an agreement to purchase Bernard’s estate’s minority stock interest in the corporation. The purchase was to be made in accordance with a stock restriction agreement which gave the company the right to purchase decedent’s shares at book value as determined by the corporation’s accountants. The accountants’ calculations resulted in a valuation of Bernard’s stock at a price in excess of $670,000. The failure of the corporation to complete the purchase of the stock from the estate led to counsel’s participation in negotiations, meetings, correspondence and other communications. Charles Mergentime maintained throughout the course of the negotiations that the corporation had suffered financial reversals and was unable to complete the stock purchase as per the October 1986 agreement. The other interested party, cobeneficiary Dian Fatula, refused to agree to a reduced-price purchase with the result that the administration of both estates was delayed several years due to the impasse. During this period, the Emmet firm continued to represent coexecutor Zinman’s position. Then in May of 1990, Emmet prepared and filed intermediate accounting proceedings for both estates designed to break the deadlock in the estates’ administration. Objections to the accounts were filed and numerous conferences and court appearances were required. Emmet also represented Zinman’s position in a proceeding to compel a partial distribution from the estate brought by Fatula.
Finally, upon Charles Mergentime’s agreement to purchase his company’s stock for his own account, a resolution of the issues among the parties was had and the intermediate account was supplemented by Emmet and converted to a final account.
Emmet claims to have spent in excess of 660 hours on Doris’ estate. The firm seeks fees of more than $110,000 and disbursements of over $2,300.
The Wolf firm represented coexecutor Mergentime from 1986 until 1990. The firm’s principal role was to give legal analysis and advice regarding the financial aspects of the *505 estate’s administration and to handle all tax matters. The firm prepared and filed the Federal estate tax return and made deposits against the New York State estate tax. It prepared Federal and State fiduciary income tax returns for the years 1986 through 1989 and estimated income tax filings for 1988 and 1989. Wolf analyzed the estate tax consequences of decedent’s and her husband’s estate plans and recommended the nature and amount of renunciations which were ultimately filed on behalf of Doris’ estate by the Emmet firm.
Wolf also advised its client on the benefit to the estate of maintaining Bernard’s partnership interest in a brokerage firm. When the brokerage company exercised its option to buy the partnership interest of Bernard’s estate, counsel supervised the sale to protect against an artificial depression of the value of the partnership interest and to insure receipt of a fair sales price. The last service provided to the estate by the Wolf firm was representation during the audit and administrative phase of the challenge by the Internal Revenue Service to the Federal estate tax return.
Wolf, on behalf of coexecutor Mergentime, prepared the October 1986 agreement whereby the Mergentime Corporation was to purchase Bernard’s stock interest in the corporation. The delay in administration of both estates and the additional legal work engendered by the corporation’s failure to close on the stock purchase have been referred to earlier. While the Wolf firm claims to have represented the best interests of the estate throughout the period of the impasse in the estate’s administration, it was in the difficult position of representing a fiduciary whose interests as chairman and principal owner of the corporation conflicted, at least prima facie, with the interests of the estate. What is certain is that the Wolf firm, prior to its discharge, spent many hours attempting to negotiate an end to the deadlock caused by the aborted corporate buyout of the Mergentime stock.
The Wolf firm states that it spent some 458 hours in representation of the estate and claims to be entitled to fees of nearly $86,000 and disbursements of $325. It must be noted that the firm’s affidavit of services includes considerable services which are wholly executorial in nature and not recoverable as part of a requested counsel fee (Matter of Verplanck, 151 AD2d 767).
Walter Handelman, Esq. was substituted as counsel for Charles Mergentime immediately following the discharge of *506 the Wolf firm in June of 1990. Counsel established books of account for the estate and maintained the estate checking account, both essentially executorial functions. He prepared and filed the New York State estate tax return and the 1991 Federal and State fiduciary tax returns. According to counsel, his primary services to the estate were his successful efforts to negotiate a settlement of the issues between his client and Dian Fatula concerning decedent’s stock in Mergentime Corporation. He claims to be the source of the suggestion that Charles Mergentime purchase the stock for himself with funds realized from distributions from Bernard’s and Doris’ estates.
Mr. Handelman’s affidavit of services reflects that he treated decedent’s estate and that of decedent’s husband as a single entity. There is no attempt to differentiate in the affidavit, or in the attached time sheets, between services performed for Bernard’s estate and those performed for Doris’ estate. He claims to have spent 270 hours working on the combined estates and seeks a fee, covering both estates, of $50,000 and disbursements of $317.
The Frank firm represented the estates of both Bernard and Doris Mergentime in a proceeding before the United States Tax Court. The Frank firm was substituted for the Emmet firm which had brought the proceeding. During the audit phase of the proceeding, the estates had been represented by the Wolf firm.
The principal tax issues raised by I.R.S. concerned the valuation of the Mergentime Corporation stock and the decedents’ residence. The stock issue carried over from Bernard’s estate to Doris’ estate since the stock was to fund a trust for Doris over which Doris had a power of appointment. I.R.S. sought to collect from both estates a combined sum of more than one-half million dollars in alleged deficiencies and interest.
Frank’s period of representation extended from November of 1990 until September of 1991. A tentative settlement of the tax proceeding was reached with I.R.S. in or about April of 1991. The terms of the settlement were very favorable to both estates. I.R.S. ultimately acceded to the valuations of the Mergentime Corporation stock and the residence as set forth in the estate tax returns. Indeed, the ultimate outcome of the combined proceedings was a net tax refund of some $12,000.
The Frank firm states that it spent a total of 131 hours on the tax matters for both estates. It calculates its time charges *507 at a figure of some $17,800 but seeks the $25,000 minimum fee set forth in a retainer agreement signed by coexecutor Charles Mergentime. Unidentified expenses totalling $397 are also sought. Inasmuch as the court is not bound by any minimum fee agreement of counsel (Matter of Lanyi, 147 AD2d 644), the court will fix Frank’s fees based on the usual criteria.
The coexecutors of this estate were within their rights in employing separate counsel to assist them in the administration of the estate. Nevertheless, the practice of retaining separate counsel tends to lead to duplication of legal services and excessive fees and the court deems it appropriate to limit the fees herein to an amount which might reasonably be awarded to a single attorney, or firm of attorneys, representing both executors (see, Matter of Bloomingdale, 172 Misc 218). Except for the tax audit and resulting proceeding in the Tax Court, no unusual or extraordinary legal services were required in this estate. Outside counsel were employed to prosecute the Tax Court matter. A review of the affidavits of services of counsel for the coexecutors indicates that considerable time was spent in reviewing the work of other counsel. Further, it is apparent that economies of time and effort were realized by the fact that Bernard’s and Doris’ estates were administered essentially as one estate.
It is clear that the failure of Mergentime Corporation to complete the purchase of its stock from Bernard’s estate greatly prolonged and complicated the estate’s administration and generated a great deal of the legal fees being applied for by counsel for the coexecutors. Beneficiary Dian Fatula alleges that the failure to purchase was engineered by Charles Mergentime for his personal benefit as principal of the corporation. She argues further that the failure to purchase led directly to the LR.S.’s challenge to the price assigned to the stock on the Federal estate tax return. Fatula requests that the court require counsel fees for Walter Handelman and the Frank firm to be paid from the beneficial share of Charles Mergentime, and not from estate funds.
It is argued on behalf of Charles Mergentime that the failure to purchase the stock was the result of the financial condition of the corporation which prevented the expenditure of the funds required to purchase the stock. Despite the apparent conflict of interest between Charles Mergentime’s role as coexecutor and that of principal of the Mergentime Corporation, the court is unable to find, on this record, that his attorneys represented only his personal interests as op *508 posed to those of the estate, or that counsel should be denied counsel fees from the estate. The court is also not persuaded that the I.R.S. challenge to the estate’s valuation of the corporate stock was brought about solely as a result of the corporation’s failure to timely purchase the securities.
In seeking fees in an amount which is approximately 25% of the decedent’s gross estate, counsel claim to have spent more than 1,300 hours on the estate’s business. Computer-generated time records have been submitted by the Wolf firm. Walter Handelman has provided handwritten, and often illegible, time records which, as earlier noted, do not differentiate between Bernard’s and Doris’ estates. Neither the Emmet firm nor the Frank firm has submitted contemporaneously recorded time charges and the court need not, therefore, accept their estimates of time expended (Matter of Phelan, 173 AD2d 621; Matter of Schaich, 55 AD2d 914). That aside, time spent is only one criterion for the fixing of legal fees and should not receive undue emphasis (Matter of Shalman, 68 AD2d 940; Matter of Brehm, 37 AD2d 95). Where, as here, there has been delay in the administration of the estate, time charges present a distorted picture of the worth of the attorneys’ services to the estate.
The criteria relevant to the fixing of legal fees have been weighed and considered (Matter of Freeman, 34 NY2d 1; Matter of Potts, 213 App Div 59, affd 241 NY 593; Uniform Rules for Trial Cts [22 NYCRR] § 207.45). The court, in the exercise of its discretion (Matter of Patchin, 106 AD2d 730), determines the fair and reasonable value of the services rendered to this estate by the Emmet firm to be the sum of $53,500 inclusive of the sum of $37,500 paid on account. Disbursements are allowed in the sum of $3,940.54. The balance of expenditures are disallowed as constituting law office overhead.
Fees payable to the Wolf firm are fixed in the sum of $42,500 inclusive of those sums paid on account. Disbursements are allowed in the amount of $314. The balance of expenditures are disallowed as items of law office overhead.
Attorneys’ fees payable to Walter Handelman, Esq. are allowed in the total amount of $32,500 payable one half from the estate of Bernard Mergentime and one half from the estate of Doris Mergentime. Disbursements are allowed in the amount of $240. Other requested expenditures are disallowed as Law office overhead.
*509 Attorneys’ fees are approved on behalf of the Frank firm in the total amount of $17,842.50 allocated evenly between the two estates. Disbursements of $397.58 are disallowed since counsel has failed to identify or describe them in the affidavit of services filed.
The various amounts awarded are for all services rendered and to be rendered through the making of the decree herein. To the extent that counsel have performed executorial services on behalf of the coexecutors of the estate, payment may be sought for those services from the fiduciaries personally. The reply affidavit of counsel for Dian Fatula, which affidavit is dated March 31, 1992 and is in the nature of a "sur-reply” affidavit, was served without leave of court and has not been considered on these applications.