| |
|---|
| **Estate of Mayer** |
| 2024 NY Slip Op 31772(U) |
| March 18, 2024 |
| Surrogate's Court, Bronx County |
| Docket Number: File No. 2015-168\E |
| Judge: Nelida Malave-Gonzalez |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

SURROGATE'S COURT, BRONX COUNTY

March 18, 2024


ESTATE OF RALPH O. MAYER, Deceased
File No.: 2015-168\E


This is a proceeding by the Bronx County Public Administrator (the "Public Administrator") to judicially settle her intermediate account as the estate's fiduciary. Before the court is a motion by the law firm of Timothy P. Fisher, Esq. P.C. ("Fisher"), an objectant to the Public Administrator's account, for an order (i) fixing and determining its fees and disbursements to be paid by the estate, the alleged amount of $14,976.00 and (ii) directing the estate to pay the legal fees and disbursements totaling $11,182.00 of Greenberg & Kaplan, LLP ("G&K"), the law firm representing Fisher in this and a prior compulsory accounting proceeding (File No. 2015-168\D). An estate beneficiary, Paul A. Mayer, opposes the motion. The Public Administrator does not take any position regarding Fisher's application.

The court considered the following papers in connection with the instant motion: Fisher's Notice of Motion, dated June 23, 2022; the Affirmation of James S. Kaplan, Esq., dated November 27, 2023 and its supporting exhibits; and the Affirmation of Paul A. Mayer, dated November 30, 2023 and its supporting exhibits. In addition, the court took judicial notice of Fisher's claim against the estate, verified on December 1, 2021; Fisher's Objections to the Intermediate Account of the Public Administrator, verified on December 1, 2021; and Fisher's Affirmation of Legal Services, dated April 1, 2021 and its

[* 1]

Amendment dated May 18, 2022.

**Procedural History**

The decedent died on January 16, 2015, survived by his two children, Elizabeth R. Mayer ("Elizabeth") and Paul A. Mayer ("Paul"). By a decree dated March 4, 2015 the court admitted the decedent's will to probate and issued letters testamentary to Elizabeth, the will's nominated executor (File No. 2015-168). According to the probate petition, at the time of his death the decedent's estate consisted of personal property valued at $2,000,000.00. The will distributes 55% of the estate to Elizabeth and the remaining 45% to Paul.

Paul filed a petition verified on November 21, 2016 seeking an order compelling Elizabeth to account, alleging *inter alia* that (i) Elizabeth had not made any distributions of estate property; (ii) Elizabeth had not provided him with any information regarding the estate; and (iii) he had not received any reimbursement as a funeral creditor (File No. 2015-168/A). The petition further requested the court to remove Elizabeth from her office and appoint Paul the estate's successor executor if Elizabeth did not file an account in the time and manner directed by the court (File No. 2015-168/B).

In April of 2017, Elizabeth and Paul entered into a written stipulation whereby they agreed, inter alia, to seek the appointment of the Public Administrator as the estate's Administrator, c.t.a. Thereafter, the parties petitioned for such relief (File No. 2015-168/C) and Paul withdrew his application for a compulsory accounting. By a decree dated June 19, 2017, the court revoked Elizabeth's letters and granted letters of administration, c.t.a. to the Public Administrator.

2

In March of 2021, Fisher petitioned as an interested party to compel an intermediate accounting, alleging that payment was owed for legal services it rendered to the estate (File No. 2015-168/D). Fisher was represented by G&K in that proceeding. On the citation return date the Public Administrator appeared through counsel who stated on the record that an intermediate account had been filed. In response, Fisher agreed to discontinue its application and the court marked the "D" proceeding as "withdrawn."

The Public Administrator commenced the instant proceeding (2015-168/E) to judicially settle her intermediate account for the period January 16, 2015 to June 18, 2017 (the "Account"). According to the Account, the gross value of the estate's assets for the relevant period was approximately $1,012,008.91, consisting of cash in Elizabeth's control derived from various financial accounts belonging to the decedent. During conferences involving the parties herein and a member of court's Law Department Elizabeth stated that she does not possess these assets and lacks any recollection as to what may have happened to them. Currently, the Public Administrator has a pending turnover proceeding (File No. 2015-168/F) against Elizabeth seeking to recover these funds for the estate.

**Fisher's Claim and Objection to the Account**

The only objectants to the Account are three law firms alleging the estate owed them payment for legal services. Fisher is the only one of these firms that has not settled its claim. Fisher initially filed a verified claim and objections, on December 6, 2021, asserting a debt of $23,452.71. Thereafter, Fisher filed an affirmation of legal services, dated April 1, 2022 (the "First ALS"), in which it alleged time charges of $33,146.50 and

3

disbursements of $306.21, a total amount of $33,452.71.   According to the First ALS, a $10,000.00 retainer was paid on account, which lowered the amount outstanding to $23,452.71.

Attached to the First ALS is Fisher's retainer letter with Elizabeth, dated June 24, 2015, which states that Fisher would be assisting her with the "administration and collection of worldwide assets of the Estate of Ralph O. Mayer."   The letter further provides that "[a]ll legal fees and disbursements to be paid by the Estate are subject to review by the Surrogate's Court ... and all or a portion thereof could be disallowed for various reasons.   You will be personally (and jointly and severally liable) to this firm for our fees and disbursements, to the full extent of such allowance or reduction, and/or in the event that the Estate does not have sufficient funds to pay same."

The retainer agreement states that the billable time of the Fisher's principal attorney, Timothy Fisher, Esq., would be charged at a rate of $575 per hour.   According to the First ALS, however, when invoices were rendered to Elizabeth, Mr. Fisher's time was billed at $585 per hour, but this discrepancy was corrected in the affirmation.   The court further notes that the time records attached to the First ALS show outstanding charges of $12,116.00.   After reviewing those records, however, it is clear that the charges therein relate to a real estate matters unrelated to the estate's administration.

By a second, subsequent affirmation without attachments dated May 18, 2022 (the "Amendment"), Fisher revised its claim, stating that it had miscalculated the amount it was due.   Without giving any specifics regarding its error, the Amendment states that the "total charges [owed by the estate] are $24,976.21, less a $10,000.00 retainer, resulting

4

in an outstanding balance of $14,976.21." The Amendment never mentions that the wrong contemporaneous time records had been previously submitted, nor did it furnish any revised time records.

By an attorney affirmation dated October 30, 2023, Fisher waived its right to a hearing in connection with its claim for attorney fees and consented to the matter being decided on the submission of papers. A motion schedule was directed to that end, and the matter was marked "fully submitted" on December 19, 2023.

## Fisher's Motion

Fisher contends that the requested fee of $14,976.21 was earned because it provided excellent assistance and advice to Elizabeth regarding her collection and handling of estate assets over a nearly 20 month period beginning in June 2015 and ending in March 2016. The firm purports that during this time it provided Elizabeth with the bulk of legal services necessary to administer the approximately $2,000,000.00 estate, which was primarily comprised of funds in various financial accounts titled in the decedent's name. As a matter of equity, Fisher suggests it would be unfair to allow the two other law firms who have settled their objections to receive payment when it was Fisher that did most of the legal work needed to marshal the estate's assets.

In addition, Fisher asserts that it benefited the estate by compelling the Public Administrator to render the intermediate Account after she neglected to administer the estate for several years. According to Fisher, compelling the Account led to clarity regarding the property and debts of the estate, and it put the estate's beneficiaries and creditors "on the road of collecting [their] share of the estate's assets." For this reason,

5

Fisher importunes the court to surcharge the estate with the legal fees that it (Fisher) incurred in this and the "D" proceedings. Fisher's counsel, G & K, has rendered invoices for its services in the two proceedings totaling $11,182.00.

Finally, Fisher acknowledges that Elizabeth never turned over the majority of the assets she collected to the Public Administrator and those funds appear to be missing without explanation. However, Fisher points out that it (i) never had estate accounts under its control; (ii) had been replaced as estate counsel prior to the Public Administrator's appointment as administrator c.t.a.; and (iii) did not assist Elizabeth in any way to divert estate assets. On this basis, Fisher posits that the issues relating to the missing estate assets are irrelevant to the court's determination of an appropriate fee award for Fisher.

Paul, as a testamentary beneficiary, opposes Fisher's request for a payment from the estate. He counters that Fisher's fee, if allowed, should be exclusively paid from Elizabeth's distributive share. Paul states that he was involved in the hiring of the other two law firms that had filed objections to the Public Administrator's account, and their claims against the estate are being settled from his own distributive share. In contrast, Paul alleges that he was not involved with retaining Fisher. Further, he asserts that during the firm's tenure as the estate's attorney not only did it refuse to communicate with him regarding the estate's assets but, as evidenced by account statements annexed to his opposition papers, approximately $781,335.00 in estate funds went missing.

As for the application to pay G&K from the estate, Paul objects to the court granting such relief on the basis that the firm was hired by Fisher, not the estate. Paul suggests

6

[* 6]

it would be inequitable to allocate these fees to his distributive share because he is already paying the other objecting law firms entirely from his portion of the estate. Paul also notes that the estate only has discovered assets of $1,050,443.00, in contrast to the $2,000,000.00 Fisher represents that Elizabeth collected for the estate, of which the Public Administrator has only recovered only $277,681.00. As such, the fees of Fisher and G&K requested herein, totaling $26,158.21, would constitute approximately 10% of the estate's demonstrated assets unless the balance of the identified estate funds can be recovered from Elizabeth.

**Analysis**

An attorney seeking approval of its legal fee has the burden of proof to establish both the reasonableness and the value of the services it rendered (*see Matter of Potts*, 123 Misc 346 [Sur Ct, Columbia County 1924], aff'd 213 AD 59 [4th Dept 1925], aff'd 241 NY 593 [1925]. The court bears the ultimate responsibility for fixing and determining the compensation of an attorney for services rendered to a fiduciary (*see* SCPA 2110; *Matter of Storteky*, 85 N.Y.2d 518 [1995]; *Matter of Vitole*, 215 A.D.2d 765 [2d Dept 1995]; *Matter of Phelan*, 173 AD2d 621 [2d Dept 1991]). In so doing, courts will evaluate a number of factors and, without necessarily placing more emphasis on any one factor over another, weigh the various considerations to arrive at a just conclusion. Generally speaking, the court's criteria for determining an appropriate legal fee are the time spent, the difficulties involved in the matter, the nature of the services rendered, the size of the estate, the professional standing of counsel, and the results obtained (*see Matter of Freeman*, 34 NY2d 1 [1974]; *Matter of Potts, supra*).

7

The determination of an attorney's reasonable compensation rests within the sound discretion of the court regardless of the terms of any retainer agreement (see Matter of Gluck, 279 AD2d 575 [2d Dept 2001]). The power to reduce a requested fee is within the court's responsibility to decide what constitutes reasonable compensation (see, SCPA 2110; Matter of Lanyi, 147 AD2d 644, 647 [2d Dept 1989]). Detailed contemporaneous time records are an important vehicle through which counsel validates the time claimed (see Matter of Kelly, 187 AD2d 718 [2d Dept 1992]), and in the absence of same it is left to the court's discretion to determine what would constitute a reasonable amount of time to perform the services (see Matter of Phelan, 173 AD2d 621 [2d Dept 1991]). Time spent by counsel, however, is only one factor to be considered in determining reasonable compensation (see Matter of Kentana, 170 Misc 663 [Sur Ct, Kings County 1939]), often serving as an appropriate starting point (see Estate of Gillett, 139 Misc2d 188 [Sur Ct, Suffolk County 1988]).

The time records submitted with Fisher's fee application raise questions regarding their completeness and accuracy. Inexplicably, the ending outstanding balance of each submitted invoice is different from the beginning outstanding balance of its subsequent invoice. The invoices show one payment of $6,311.50, but make no mention of the $10,000.00 retainer that Fisher admitted to receiving in a previously filed affirmation of legal services. The last invoice rendered by Fisher, dated February 15, 2017, states that only $218.50 was owed.

Fisher's application does not indicate whether the principal attorney handling the file had any particular qualifications or expertise warranting an hourly rate of $575 per

8

[* 8]

hour in 2015 and 2016. Furthermore, Fisher does not show or even suggest that there were any particular difficulties or complexities involved with the estate's administration. It appears that Fisher's chief task was to assist Elizabeth in locating and liquidating decedent's various financial accounts. The time records indicate that the bulk of billable attorney time was spent on "conferences" and e-mails, but many of the entries do not explain their necessity or establish that the attorney services being billed do not include the performance of non-compensable routine executorial tasks, i.e., work that could have been done by a layperson (see *Matter of Leffler*, 222 AD2d 332 [1st Dept 1995]. In sum, the time records fail to demonstrate how Fisher's legal services benefitted the estate to an extent that justifies the fee requested herein.

Fisher does not state the value of the assets it helped bring into the estate or provide any insight into what was required to effectuate their transfer. According to the papers submitted in opposition to Fisher's application, approximately $780,000.00 was recovered for the estate while Fisher served as Elizabeth's counsel. Fisher does not dispute this claim, nor does it deny that during this same period almost all of those collected assets were removed from the estate and remain missing. Therefore, these unopposed allegations are accepted by the court as facts (SCPA 509).

It is clear to the court that Fisher provided services that benefitted the estate, but the requested fee is unreasonable. As an initial matter, although the fee requested here is portrayed as being $14,976.21, Fisher is actually seeking to be paid $31,287.71 because it previously received a $10,000.00 retainer and a payment on account in the amount of $6,311.50 (collectively, the "Prior Payments"). Moreover, it is not incumbent

9

upon the court to decipher time records. The burden is on the attorney seeking fees to provide proof clearly supporting the request, which Fisher has failed to do. Accordingly, after careful consideration of all relevant factors, including that the legal fees of other counsel filing objections to the Account are being paid from Paul's share of the estate, the court fixes and determines the fair and reasonable value of services rendered by Fisher to be $12,500.00, with 45% of this expense allocated to Paul's share of the estate and 55% percent allocated to Elizabeth's distributive share. As Fisher already received the Prior Payments, it has been compensated in excess of its fixed fee. If this overpayment was made with estate funds, Fisher shall return the sum of $3,811.50 to the estate within sixty days from the date hereof (see SCPA 2110 [3]).

With respect to the legal fees incurred by Fisher in this and the "D" proceeding, generally a party is not entitled to recover its attorney's fees from an opposing party as the same are considered incidents of litigation (see City of Buffalo v Clement Co., 28 NY2d 241, 262-263 [1971]; Matter of Rothko, 84 Misc2d 830 [Sur Ct, New York County 1975]). In instances where the court has found that a contestant's legal fees are chargeable against the estate, the court has determined that the services rendered benefitted the estate as a whole, not merely the contestant (see Matter of Smith, 167 Misc 95 (Sur Ct, Kings County 1938]).

To prevail, Fisher had the burden of establishing in a clear and convincing fashion that the services of its counsel, G&K, inured to the benefit of the estate (see In re Cannariato's Estate, 159 Misc 409 [Sur Ct, Kings County 1936]). Here, Fisher has made no such showing. The court is unpersuaded by Fisher's argument that compelling an

10

intermediate accounting benefitted the estate, especially since there are significant assets that still need to be collected and the Public Administrator would have rendered a final account after its turnover proceeding against Elizabeth. Certainly, the intermediate Account did nothing to enlarge the estate. In fact, the legal fees and other expenses incurred by the estate in this and the "D" proceeding actually diminished the shares of its beneficiaries. Accordingly, Fisher's application to surcharge the estate with the legal fees of G&K is denied.

## Conclusion

On this state of the record, (i) Fisher's legal fee is fixed and determined in the amount of $12,500.00, with 45% of this expense allocated to Paul's share of the estate and 55% percent allocated to Elizabeth's distributive share and (ii) Fisher shall return the sum of $3,811.50 to the estate within sixty days from the date hereof if the payments it received from the estate for legal services exceed the amount of the fixed fee. The application to have the legal fees of G&K paid by the estate is denied. The *pro se* parties and all counsel shall appear for a conference before the Surrogate on April 18, 2024, at a time to be determined.

The Chief Clerk is directed to mail a copy of this decision, constituting the order of the court, to all *pro se* parties and counsel of record.

Proceed accordingly.

HON. NELIDA MALAVÉ-GONZALEZ,
SURROGATE

11