Julius M. Gerzof, Plaintiff, *v.* Robert J. Sweeney, as Mayor of the Incorporated Village of Freeport, et al., Defendants.

Supreme Court, Special Term, Nassau County, December 12, 1966.

*Allinson & Gerzof* for plaintiff. *Gehrig, Ritter, Coffey & Stein (Robert M. Stein* of counsel), for Robert J. Sweeney and others, defendants. *Sprague, Dwyer, Aspland & Tobin (Joseph Tobin* of counsel), for Norberg Manufacturing Co., defendant.

Theodore Velsor, J. This matter came before this court for an assessment of damages arising out of a taxpayer's action commenced in March, 1963, to annul a resolution of the defendants Mayor and Trustees which awarded a contract to defendant Nordberg for the purchase and installation of a 5,000 KW Diesel-powered electric generator, to set aside the contract and enjoin performance of same and fix liability upon the defendants for any damages sustained by the Incorporated Village of

Freeport and for such other relief as to this court seems just and proper.

Upon the trial the complaint was dismissed at the end of the plaintiff's case. The dismissal was affirmed by the Appellate Division (21 A D 2d 800) and permission to appeal to the Court of Appeals was granted (14 N Y 2d 490). After the order of affirmance by the Appellate Division, and before the reversal by the Court of Appeals, the defendants proceeded with the performance of the contract. The Court of Appeals determined that judgment should have been rendered in favor of the plaintiff as a matter of law and remitted the case to this court for further proceedings thereon (16 N Y 2d 206). An application to that court by the defendants for reargument was denied (17 N Y 2d 549). The hearing on the assessment of damages was held pursuant to an order of this court dated December 16, 1965.

Plaintiff seeks restitution from Nordberg of the sums paid to it, with interest, and damages for payments incidental to the void contract.

The law respecting municipal contracts in this jurisdiction is clear. By statute (General Municipal Law, § 103) moneys may not be expended without lawful authorization. This requires that the obligation be lawfully incurred. The statutes are a restraint not only upon public officials but upon others as well, and put upon all who would deal with a municipality the need of first looking to the authority of the agents with whom they deal (*McDonald* v. *Mayor,* 68 N. Y. 23). The Court of Appeals has held that the instant contract was unlawful and invalid. It therefore follows that no payment made or received thereunder was lawful (*Albany Supply & Equip. Co.* v. *City of Cohoes,* 25 A D 2d 700).

Defendant Nordberg urges that equitable considerations be applied for the reasons that the village has received value for its money, and no loss to the village has been shown. It further urges that the village may not retain the generator and at the same time recover back the amounts paid, pointing out that the proof shows that the economic consequences of removal of the generator would be an estimated loss to the village of $324,000 for removal of the existing generator and accoutrements, preparation for a new generator, and purchase of electric power to supply the village power demands until a replacement is operative.

Nordberg also urges that, notwithstanding the exclusion of all other manufacturers by preparing specifications which could be met by only one manufacturer, had the trustees adopted a

standardization resolution, as permitted by subdivision 5 of section 103 of the General Municipal Law, the statutory requirements for awarding this contract would have been fulfilled.

Upon testimony presented the court finds that nothing of value was received by the trustees as an inducement to the making of the contract.

The arguments for the application of equitable principles might be compelling were it not for the fact that Nordberg is not an innocent party. Nordberg actively participated in the preparation of the specifications, was made a party to this suit, participated in the original trial and the appeals to the Appellate Division and the Court of Appeals. The Mayor and trustees, except Fairberg, had voted to award the contract to defendant Nordberg. Prior to a final determination of litigation and with full knowledge of the possible consequences of an ultimate reversal all defendants except Fairberg and Muller (his term having expired) elected to proceed under the contract, make the installation and make payment. No emergency was shown to have existed. The contract contained a substantial penalty clause for delayed completion, but it does not appear that relief was sought therefrom.

As a result of this perseverance in the face of uncertain consequences the village now, three years later, is in the intolerable position of being faced with the payment of higher costs for every facet of the project were the court to make an attempt to restore the parties to their original positions. Thus the defendants are scarcely in a position to seek the invocation of equitable considerations. In *Seif* v. *City of Long Beach* (286 N. Y. 382, 387), an action against a municipality on an implied contract, the Court of Appeals stated '' this court has given emphatic warning that equitable powers of the courts may not be invoked to sanction disregard of statutory safeguards and restrictions.'' (See, also, *Lutzken* v. *City of Rochester* (7 A D 2d 498). Removal of the generator unit will not be allowed.

The moneys paid by the Village to Nordberg on its contract totalled $757,625 in partial payments of $227,287.50 on July 17, 1963, $75,762.50 on April 15, 1964, $165,168.75 on May 20, 1964, $100,000 on May 26, 1964, $113,488.75 on October 7, 1964 and $75,917.50 on December 16, 1964. The proofs reveal that the generator installation was a part of a general power plant modernization plan which involved, *inter alia,* removal of two older generators of lesser capacity, alteration of the plant building, installation of new plumbing and electrical wiring, installation of new switch gear, removal of existing concrete pads,

excavation and installation of a new pad for the Nordberg generator and reconstruction of external housing for cooling equipment.

Funds for payment of the cost of this project were raised by two bond issues of $400,000 and $850,000, respectively, which were combined into a single public offering of $1,250,000.

Plaintiff claims as damages, in addition to the sums paid direct to Nordberg, interest of $292,000 on the bond issues, $4,088.45 for legal fees, printing and advertising in connection with the bond offering, $344,127.80 for a portion of the general construction costs claimed to be allocable to the engine, and the further sum of $52,345 paid for the removal of existing concrete pads to prepare for the Nordberg engine. The total of plaintiff's claim is $1,450,186.45.

Of the foregoing, the sums shown to have been properly allocable to the Nordberg engine are the sums paid to Nordberg totalling $757,625. The sums claimed for over-all plant renovation, engineering costs, construction costs and the bond interest and expenses were not charged against any phase of the work but were interrelated and, for aught that appears, would have been required in any case.

Plaintiff offered in evidence a break-down sheet showing construction costs, prepared by a village cost-account clerk. This was introduced for the purpose of showing cost allocations to the generator. This document, except for the generator cost and soil treatment charge of $1,500, showed amounts paid for all modernization work performed at the power plant, and is insufficient proof of additional costs allocable to the generator only. The same may be said with respect to the two bond issues. It is by no means clear just what portion of each bond issue could be applied to the Nordberg contract. Percentile allocations are arbitrary and based only upon speculation. Therefore the proof regarding the portions of the bond costs and general plant renovation specifically allocable to the Nordberg contract fails.

In any event plaintiff's claim for damages arising out of the collateral phases of the general plant modernization project and the bond issues may not be allowed. The contract which has been annulled is the generator contract, and not the other contracts which were awarded in pursuance of the modernization project. That all of the work performed, including the sale and installation of the generator, was interrelated, cannot be gainsaid. However, it must be borne in mind that the project was undertaken to provide greater power generating capacity and to replace obsolescent electrical switch gear.

No proof was offered sufficient to show that expenses were incurred peculiar to the Nordberg generator which were greater than that which would have been required for the installation of another generator of similar capacity. Therefore damages are found to be the sums paid to Nordberg and Nordberg will be directed to make restitution of such sums. Interest is not allowed.

Permitting the village to retain the generator and directing repayment of the sums illegally paid is indeed a harsh result. Nevertheless the law is clear, and to permit literal application of equitable principles in this case would invite the evils the statute is obviously intended to prevent. This is a result the courts of this State have not countenanced, notwithstanding the views held in other jurisdictions (*Albany Supply & Equip. Co.* v. *City of Cohoes*, 25 A D 2d 700, *supra*; *Lutzken* v. *City of Rochester*, 7 A D 2d 498).

At the conclusion of the trial plaintiff requested an allowance for attorneys' fees and a separate hearing was held thereon.

Plaintiff asks that in fixing the allowance the court consider the rules respecting contingent retainers in negligence cases and to apply these standards in this case. Plaintiff also asks that such allowance be paid out of the fund created. There is no authority for these propositions. The special rules in negligence cases are arbitrary standards applicable only to those cases. Any consideration of attorneys' fees must be by virtue of an additional allowance (*Chase* v. *City of Syracuse*, 34 Misc. 144; 20 Carmody-Wait, New York Practice, p. 165; 23 Carmody-Wait, New York Practice, p. 232 *et seq.*).

In considering the matter of an extra allowance the duality of plaintiff's status must be considered. As plaintiff herein he is a private citizen liable for the payment of taxes. He is represented by a firm of attorneys of which he is a member. In his role as a client he is responsible for counsel fees, and as a successful party an additional allowance will be made therefor in an amount which would be a reasonable charge to a lay client. Having achieved success in this litigation, plaintiff should not be left to bear the costs and expenses.

As an attorney, plaintiff personally conducted the preparation and presentation of plaintiff's case upon the original trial, two appeals and the present hearings. Plaintiff's proof in respect to his services consisted of a recitation outline of the various stages through which this suit progressed. His testimony concerning the time spent was that, based upon perusal of the files, he estimated 200 man days were spent thereon, over a period of three years of which 60 to 70 percent was

spent by plaintiff, and the balance by his associates. No time records were kept by the plaintiff. The fact that no time records were kept, although not in itself controlling, leaves the court with a paucity of proof upon which to determine the reasonable value of the legal services rendered. However counsel retained by the village, who participated in this suit from its inception, did in fact maintain diaries of the time spent on each stage of this suit to and including the instant hearing, and testified concerning their charges to the village based upon such time records and the rate upon which those charges were based.

In *Matter of Lipsit* (21 A D 2d 509, 515) Mr. Justice CHRIST writes: "*Matter of Potts* (213 App. Div. 59, affd. 241 N. Y. 593) still stands as the beacon in fixing reasonable attorney's fees. The criteria are: the time spent; the difficulties involved; the nature of the service; the amount involved; the professional standing of the counsel; and the results achieved."

In this case the court has considered the time claimed to have been spent, the standing, experience, ability and reputations of the respective counsel, the nature of the case and its difficulties and the result obtained to date. Considering all of the factors, the court is of the opinion that a reasonable allowance to the plaintiff for attorneys' fees would be $25,000. Judgment will therefore be granted, directing defendant Nordberg to make restitution to the village of the sums received, and against all of the defendants, excepting Fairberg and Muller, in the sum of $25,000, with taxable costs and disbursements.