R.F. v L.K. (2024 NY Slip Op 50358(U))

[*1]

R.F. v L.K.

2024 NY Slip Op 50358(U)

Decided on April 4, 2024

Supreme Court, Westchester County

Hyer, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on April 4, 2024
Supreme Court, Westchester County

R.F., Plaintiff,

against
L.K., Defendant.

Index No. 54347/2017

James L. Hyer, J.

Plaintiff has demanded that Defendant pay her counsel fees following the parties' settlement of the post-judgment contempt application in this matrimonial action. 
On January 2, 2024, the parties and counsel appeared before the undersigned for a contempt hearing. However, after conferencing the matter with the Court, the outstanding issues that formed the basis of the contempt hearing were resolved with the terms of the agreement placed on the record (NYSCEF Doc. No. 639 at 4-11):
MS. RESSLER: [L.K.] has an obligation to pay $7,283.15 per month in spousal maintenance. $3,380.16 in child support and $1,014.35 in health insurance premiums each month. This totals $11,677.66 per month. Child support, maintenance and health insurance from July 2022 through October 2023 has been reduced to three separate money judgments.
[L.K.] is in arrears for child support, spousal maintenance and health insurance premiums for November 2023, December 2023 and January 2024. [L.K.] agrees to pay to [R.F.] $175,000 via wire transfer in full satisfaction of the following:
Maintenance, child support and health insurance obligations from November 2023 through June 2024, which constitutes three months of retroactive support and five months of future support payments, along with $80,000 of legal fees incurred by [R.F.] in connection with these post-judgment enforcement proceedings.
The first $50,000 shall be wired to [R.F.]'s Chase account, routing number [redacted] and account number [redacted] today, January 2nd, 2024. The remaining $125,000 shall be wired to the same account, that [R.F.] has, on January 5th, 2024 during business hours.
Once payment has been received by [R.F.] in the amount of $175,000, [L.K.] will have satisfied his obligations for support and health insurance from November 2023 through [*2]June 2024 and all legal fees being sought by [R.F.] in these proceedings.
Upon receipt of the $175,000 by [R.F.], she withdraws all contempt applications with prejudice and both parties deem all pending motions settled.
[L.K.] shall sign a letter required by B. Riley to effectuate a transfer of his retirement account to [R.F.] in the amount of $40,181 in accordance with the Decision after trial. The signing of this letter shall take place today.
[L.K.] represents that there are at least $40,181 in the B. Riley Retirement Account in his name as of today. In the event, any additional documents are necessary to be signed by B. Riley, [L.K.] will sign same withing 48 hours of being provided with said documents.
[L.K.] will release [R.F.]'s cell phone number, which is [redacted] on or before January 4th, 2024.
[L.K.] has an obligation under the Decision after trial and the Judgment of Divorce to obtain a term life insurance policy in the amount of $1.1 million naming [R.F.] as the beneficiary. The policy may be a declining policy allowing him to decrease the amount of support actually paid.
By January 30th, 2024, [L.K.] shall schedule a medical appointment with the life insurance company, provide the company with all requested documents, releases and whatever else the company requires in order to obtain a policy.
In the event [L.K.] is denied coverage through the life insurance company, he shall apply to two additional life insurance companies for coverage within ten days of learning of his denial of coverage.
[L.K.] shall provide proof to [R.F.] or her Counsel of his compliance with this provision on January 30th, 2024 and shall provide proof to [R.F.] or her Counsel within ten days of being denied coverage that he has applied to two additional companies. Proof of coverage shall be provided to [R.F.] or her Counsel immediately upon receive by [L.K.].
In the event [L.K.] fails to cooperate with this provision, it shall be deemed in contempt per se and there shall be no need for the Court to make a determination of the contempt, only a sentencing.
The parties had an investment with Grapeshot during their marriage. [R.F.] has received her share of two payments from Grapeshot to date.
Her share of the $930,038.48 in May of 2018 payment and her share of the $168,392.98 payment in the December of 2019. We are aware of at least one further payment in the amount of $198,346.90, which [L.K.] retains in its totality.
In full satisfaction of the taxes owed by [R.F.] on these three payments from Grapeshot, the parties agree that she owes $150,000. However, since [R.F.] never received her share of the payment of $198,346.90, the parties agree that [R.F.]'s tax obligation on the three payments shall total $50,827.
The parties agree that the $50,827 shall be credited against the Counsel fees that [L.K.] owes to Guttridge and Cambareri in the amount of $41,201.14, which [R.F.] has paid thereby eliminating any obligation by [L.K.] to pay any fees to Guttridge and Cambareri in the amount of $41,201.14.
The remaining taxes due by [R.F.] to [L.K.] in the amount of $9,625.86 shall be deducted from the money judgment for $16,467.87, which was entered in December of 2023.
The money judgment for $16,467.87 shall be deemed satisfied and Plaintiff's Counsel shall file a satisfaction. A new money judgment shall be submitted in the amount of [*3]$6,842.01 by [R.F.]'s Counsel.
* * *
THE COURT: Back on the record. The Court will note that Plaintiff's Counsel seeks a Court document, Exhibit Number 1, rather, has been marked and moved into evidence, which is a letter from to B. Riley that was drafted by Plaintiff's Counsel, dated November 29th, 2023. It's been signed by the Defendant and notarized by Defendant's Counsel.
* * *
THE COURT: * * * It's my understanding that the parties have agreed, through Counsel, that immediately following today's appearance, they are going to go to a Verizon store in White Plains to effectuate the agreement that the Defendant will release Plaintiff's cell phone number to Verizon into her name. Is that correct?
MS. HALL: Correct.
MS. RESSLER: Yes.
THE COURT: Thank you. Ms. Ressler?
MS. RESSLER: In lieu of the money judgment for $16,467.87 being deemed satisfied, the money judgment for $16,467.87 shall be vacated. And [R.F.]'s Counsel shall file an Order seeking to vacate said money judgment within five days from receipt of payment by [R.F.].
This agreement satisfies [R.F.]'s obligations on all taxes for the three Grapeshot distributions referenced herein. And [L.K.] shall hold harmless and indemnify [R.F.] on any taxes associated with the payments on these three distributions. Any other payments received from Grapeshot thus shall follow in accordance with the Decision after trial and the Judgment of Divorce.
* * *
MS. RESSLER: I just want to confirm — Those are the terms of the settlement, Your Honor. I did want to confirm one additional item. We learned that the IRS may have a hold or may have seized certain accounts that [L.K.] has.
I just wanted confirmation that the B. Riley Retirement Account with the $41,000 and change, that to [L.K.]'s knowledge, it has not been seized by the IRS and that there is no lien on it.
MR. LOUIS KERNER: I'm not aware of any liens on it, no.
* * *
MS. HALL: After speaking with my client and after speaking with Counsel, he has advised me, as well as relayed on the record, that he's not aware of any tax liens, garnishments or levies of the Grapeshot account.
And as such, Your Honor, at this point in time, has already agreed to hold the Plaintiff harmless moving forward. He would also indicate that he is making this agreement in good faith in that he has no reason to believe, at this time, that there are any levies on that account.
THE COURT: So it's my understanding that both parties are making the representation to each other and each party is relying upon these representations from the other that there are no liens, judgments or warrants against the other party that would prevent these terms from being effectuated and implemented by either party. Is that correct?
MS. HALL: That is correct.
THE COURT: Ms. Ressler?
MS. RESSLER: That's correct. I just want to clarify what was placed on the record. There are no Grapeshot accounts. The monies for the three distributions have already been released. So we're talking about liens on any accounts that would effect the distribution of the assets and the points that we settled on today's record.
The Court allocuted the parties (NYSCEF Doc. No. 639 at 11-16) and directed them to order the transcript and submit it to be "so ordered" by January 31, 2024 (NYSCEF Doc. No. 639 at 16-17). The Court also set January 31, 2024, as the control date for Plaintiff's counsel to submit any proposed orders to the Court either on consent or noticed for settlement (NYSCEF Doc. No. 639 at 17). 
The Court set January 8, 2024 for an in person appearance "to confirm that all of the payments that were made were made timely" (NYSCEF Doc. No. 639 at 17). The Court stated further "[h]owever, by January, the 5th at 5:00 p.m., you can submit a Letter of Compliance," and "[i]f that is submitted, there will be no Court appearance on the 8th" (NYSCEF Doc. No. 639 at 17).
On January 8, 2024, Plaintiff's counsel wrote to the Court (NYSCEF Doc. No. 635):
A settlement was reached at the hearing on January 2, 2024 and the terms were spread on the Record that afternoon. The Defendant was to pay $50,000 on January 2, 2024 and the balance of $125,000 on January 5, 2024 by the close of business. The Defendant was also directed to go to the Verizon store or to provide the PIN to the Plaintiff on January 2, 2024.
My client did not receive the $50,000 wire on January 2nd despite the Defendant having the funds. Through counsel, we were advised that he would not pay the $50,000 since he could not make a timely payment with the remaining $125,000 due on January 5th despite entering into a payment plan that he had previously suggested after conferring with his family member and the bank. See attached email from the Defendant to counsel on January 2, 2024. After conferring with counsel for the Defendant several times, my client finally received the $50,000 wire on the evening of January 3rd which cleared on January 4th. As of the writing of this correspondence, my client has received no other funds and $125,000 remains outstanding.
The Defendant neither provided the PIN nor came to the Verizon store after Court on January 2nd. My client waited in the store for several hours and the Defendant made several excuses for not coming to the store and for not providing the PIN such as that he didn't have good reception in White Plains, he wanted to go home to log in, and he claimed Verizon was trying to obtain the PIN. She finally received the PIN on Wednesday.
On consent of counsel, the January 8th conference was adjourned to January 11, 2024 at 3:00 p.m. with appearances required of all parties and counsel (NYSCEF Doc. No. 636). The Court held the January 11, 2024 conference. The parties and counsel appearance for the conference and the following occurred (NYSCEF Doc. No. 660 at 3-8):
THE COURT: Thank you very much. My recollection is that this case had been resolved with the understanding that Defendant would be providing certain payments to Plaintiff pursuant to a schedule, and I believe if he had  if he did not that he was acknowledging [*4]that he was in contempt of court?
MS. RESSLER: Yes.
THE COURT: And then we would be proceeding to a sentencing hearing. Plaintiff's Counsel, can you update me?
MS. RESSLER: Yes. We spread the terms on the record on Tuesday, January 2nd. At that time, Your Honor had asked if the payment could be made that day. We were advised that only $50,000 could be made that day, and pursuant to the schedule that the Defendant himself said he could make, he was given until Friday, January 5th, to make the payment or we would have had to appear the following Monday, January 8th. Instead of making the $50,000 payment on January 2nd, even though he had the money on January 2nd and confirmed such in writing, he made that payment only the following day. Then there were two other payments made since then, a payment for 10,000 and a payment for 15,000, and my client has been notified that there's another payment of 10,000 pending as of today. So as of today, my client has received only $85,000, there's still another $90,000 outstanding, and everything was supposed to be paid by last Friday which is the deadline that the Defendant came up with and said he could pay. My client actually came to court on Monday which was the scheduled appearance. I understand Ms. Hall had a conflict. So the Defendant bought himself an extra six days from last Friday through today to make the payment. He still has not made it.
THE COURT: Ms. Ressler, is my recollection correct that as part of the settlement that was reached and in consideration for those terms, that the Defendant had acknowledged that he would be held in contempt of court and we would be proceeding to sentencing in the event that he failed to make these payments timely?
MS. RESSLER: I believe that was for future payments. I don't think it was for these payments. I think with respect to these payments, we agreed we could come back on Monday of this week and address it with Your Honor.
MS. HALL: Correct. I can actually tell the Court, we did not agree to that specific term as the Court just stated. It was solely for the purpose of the life insurance. We were trying to be creative to determine how we could settle life insurance. So we gave a specific schedule within the first three days of applying. If you're denied, then you go to a second company. If you are denied, then you go to a third company. And if my client didn't get approved —
THE COURT: I recall all of that.
MS. HALL: So that was for —
THE COURT: We'll address that in a moment.
MS. HALL: Thank you. So with regard to the actual payments that were made, Judge, my client is up to $100,000. I forwarded that to Counsel. We've been on trial all day, so I know she probably didn't get a chance to check her email on or about lunchtime. I forwarded the most recent payment that was made for $15,000. I just want to remind Counsel that we all were aware he was borrowing the money from his sibling. The Court even had him step outside to make sure that the money can get through. That's why we asked for the week, for the Friday, because the assets had to be sold. His sibling has been sending him, based on the way the assets are freeing up, about 10 to $15,000 a day or every other day, something like that.
THE COURT: What is your position with respect to how much your client owes the [*5]Plaintiff at this point?
MS. HALL: Oh, he definitely owes her 75 of the 175. He's paid 100, but the last 15 paid today probably didn't hit her account yet. But I forwarded the email.
THE COURT: So your position is that you have at least 75,000 due and owing?
MS. HALL: Definitely, we do.
THE COURT: I'm asking you to make a representation on the record as to when you feel your client can make payment in full on what's outstanding.
[L.K.]: The —
THE COURT: No, no. Speak to your attorney, please.
MS. HALL: My client states that based on what has been happening with respect to the $10,000 amount that has been clearing each day, he would need eight business days to make sure it continues to pay, and based on the history we see that I've been forwarding the emails to Counsel, those payments have been made. And as such, we would respectfully request, to be on the safe side, Judge, if Counsel would agree to 10 business days just to be on the safe side. But we need eight.
THE COURT: Ms. Hall, I want you to look, please, at your calendar. January 25th at 2 o'clock p.m.?
MS. HALL: Did you say 3, Judge?
THE COURT: 2.
MS. HALL: Yes.
THE COURT: Ms. Ressler?
MS. RESSLER: I have a conference, but I can be here, no problem.
THE COURT: So based upon the Defendant's apparent efforts to try to make these payments, although they're not timely, I believe that there is good faith being shown. And the endeavor here is really not to incur additional legal fees but to get the Plaintiff paid. So I'm going to reschedule this for another status conference on January 25th at 2 o'clock p.m. Ms. Hall, please explain to your client that if the payments are made in full, okay, and a letter submission is made by both of the attorneys and it's been paid in full, that will be taken off the calendar. However, to the extent that it remains on the calendar, I'm giving Ms. Ressler the ability on the record without the necessity of a formal motion to make an application for additional legal fees. As you know, her time is valuable as is yours. She's not here pro bono. I'm assuming and trust you're charging your client?
MS. RESSLER: I am.
THE COURT: You are. So our effort is to try to get to the end of the process here. 
Plaintiff's counsel also requested an opportunity to make another application for fees "because since January 2nd there has been a lot of communications between myself and Ms. Hall and myself and my client" (NYSCEF Doc. No. 660 at 8). Without addressing the fee request, the Court scheduled another status conference for January 22, 2024 at 9:30 a.m. (NYSCEF Doc. No. 638); however, that January 22nd conference was adjourned to January 29, 2024 at 9:30 a.m. due to the Court's schedule (NYSCEF Doc. No. 640). 
On January 26, 2024, Plaintiff's counsel informed the Court that (NYSCEF Doc. No. 641):
As of earlier this week, [R.F.] received the balance of the arrears that were due on January 5, 2024. In light of the fact that the support arrears have now been paid, the only [*6]open issue are counsel fees incurred between January 3, 2024 and now, relating to the enforcement of the order, which are solely the result of [L.K.]'s failure to comply with the payment schedule that he himself confirmed he was able to pay on January 2, 2024.
In lieu of appearing on January 29th, it is respectfully requested that I be given an opportunity to submit an affirmation as to the fees incurred between January 3, 2024 and now that solely resulted from [L.K.]'s non compliance with the court order.
We remain hopeful that [L.K.] complies with the January 30th deadline to comply with his life insurance obligation.
The Court granted Plaintiff's counsel's request and set a schedule for submissions and opposition papers (NYSCEF Doc. No. 642). In addition, on January 31, 2024, Plaintiff filed a Satisfaction of Judgment in the amount of $16,666.84, which reflected Defendant's payment thereof on January 22, 2024 (NYSCEF Doc. No. 643). 
Furthermore, on February 5, 2024, this Court entered a money judgment in Plaintiff's favor and against Defendant in the amount of $7,040.98, "which represents the total amount of arrears due to the Plaintiff from the Defendant as and for his share of the children's health insurance costs through October 31, 2023, plus statutory interest as of December 11, 2023, less the taxes it has been agreed that the Plaintiff owes the Defendant in connection with certain Grapeshot proceeds (i.e., $9,625.86) (NYSCEF Doc. No. 651). 
Plaintiff's counsel filed here affirmation on February 2, 2024, seeking $4,257.75 for counsel fees incurred since January 2, 2024 which were "due solely to the Defendant's non-compliance with the January 2, 2024 So-Ordered transcript" (NYSCEF Doc. No. 645 at ¶¶2, 19). Plaintiff explains that "[o]ut of an abundance of caution, this Court Out of an abundance of caution, this Court directed the Defendant to contact the bank and confirm that the monies totaling $175,000.00 would be available to meet the proposed payment schedule. In accordance thereto, Defendant went into the hallway on the 10th floor of the courthouse and confirmed, via telephone, that the funds would be available in accordance with the payment schedule he proposed. Defendant represented to counsel and the Court that the funds were available to him and that he could make the payments as proposed. As such, the payment schedule was made a part of the final settlement which was read into the record on January 2, 2024" (NYSCEF Doc. No. 645 at ¶6). 
Plaintiff asserts that Defendant's representations were false, and she did not receive the $50,000 by the close of business on January 2, 2024, "caus[ing] insurmountable stress" (NYSCEF Doc. No. 645 at ¶¶7-8). Plaintiff states that despite his confirmation to the Court that he had the monies to pay Plaintiff by the close of business on January 2, 2024, "he outright refused to make this payment as promised," causing Plaintiff's counsel to have to contact Defendant's counsel about the payment's status. Plaintiff's counsel "was advised that the Defendant was under the impression that since he could not pay the $125,000 on January 5th, the settlement was void and he did not have to pay the initial $50,000 either. This was astonishing to me since it was Defendant who offered, arranged, and confirmed this payment schedule in court the day before and had also confirmed that the funds were available" (NYSCEF Doc. No. 645 at ¶8). Although Defendant ultimately paid the remaining sums over the next few weeks, it was not without additional efforts and follow up by Plaintiff's counsel, causing Plaintiff to incur additional counsel fees (NYSCEF Doc. No. 645 at ¶¶9-15). 
In opposition, Defendant proffers his own affirmation, disputing Plaintiff's counsel's [*7]statements and arguing that Plaintiff has been far from blameless in this matrimonial litigation. He also claims that he could not make the payments due to banking regulations and practices (NYSCEF Doc. No. 654 at ¶¶3-4). 
In reply, Plaintiff argues, inter alia, that Defendant's affirmation should be rejected as it does not comply with CPLR § 2106 because it fails to contain the required "Affirmation of Truth Statement" (NYSCEF Doc. No. 661 at ¶3). Plaintiff also points to an email from Defendant "wherein he admits that he purposefully did not send the initial $50,000 (despite the clear and unequivocal terms spread on the record that day) because '[he couldn't] send the other $125k for another week we can initiate the wire and send proof of such initiation as soon as I am told sending the rest a week later is fine " (NYSCEF Doc. No. 661 at ¶6). Plaintiff states that this is plain self-help and a re-writing of the rules (NYSCEF Doc. No. 661 at ¶6). Plaintiff's counsel states that in addition to the amount initially request, she has incurred an additional $1,062.50 in counsel fees, demanding an award from Defendant of $5,320.25 (NYSCEF Doc. No.661 at ¶12).
As a threshold matter, Plaintiff is correct that Defendant's Affirmation does not comport with CPLR § 2106. According to CPLR § 2106, effective January 1, 2024, titled "Affirmation of truth of Statement,"
The statement of any person wherever made, subscribed and affirmed by that person to be true under the penalties of perjury, may be used in an action in New York in lieu of and with the same force and effect as an affidavit. Such affirmation shall be in substantially the following form:
I affirm this ___ day of ______, ____, under the penalties of perjury under the laws of New York, which may include a fine or imprisonment, that the foregoing is true, and I understand that this document may be filed in an action or proceeding in a court of law.
(Signature)
Defendant neither included that affirmation language, nor did he submit a notarized affidavit. Although he stated that he "affirms the following under the pains and penalties of perjury," this is insufficient and does not encompass the requisite language, or language substantially reflective of that required in the statute. There is no acknowledgement of the laws of New York or the possible penalties of fine or imprisonment if the statements made therein are not true. Thus, Defendant's Affirmation is not in admissible form and cannot be relied upon as proof of facts set forth therein (see Graham Court Owners Corp. v Memminger, 81 Misc 3d 1248[A], *2 at n. 5 [Civ Ct, NY County 2024] [respondent's affidavit is not notarized, nor does it contain language required in recently amended CPLR §2106; consequently, it could be basis to grant summary judgment]; compare Hereford Insurance Co. v Physio Care Physical Therapy, PC, 2024 NY Slip Op 24083, *2 [Sup Ct, NY County 2024] [where an unsworn submission states "I affirm this 25th day of January, 2024, under the penalties of perjury under the laws of New York, which may include a fine or imprisonment, that the foregoing is true, and I understand that this document may be filed in an action or proceeding in a court of law," and is signed with the same name as the person identified in the body of the statement, the court found statement submitted satisfies CPLR 2106]; [2d Dept 2024]). As a result, Plaintiff's factual allegations remain unrefuted (see Diego Beekman Mutual Housing Association Housing Development Fund Corp. v Hammond, 81 Misc 3d 1244[A], *1 [Civ Ct, Bronx County 2024]). 
As to the substantive portion of the application, "[i]n determining a reasonable attorney's fee, the court should consider factors such as time and labor, difficulty of the questions involved, [*8]the amount involved, counsel's experience, ability, and reputation, and the customary fee charged for such services" (In re Cincotta, 139 AD3d 1058, 1059 [2d Dept 2016], citing In re Potts' Estate, 213 App Div 59, 62 [4th Dept], aff'd 241 NY 593 [1925]). "Furthermore, in exercising discretionary power granted to it by the Legislature in Domestic Relations Law §237, 'a Court should review the financial circumstances of both parties together with all the other circumstances of the case, which may include the relative merit of the parties' positions'" (J.S. v J.S., 19 Misc 3d 634, 653-654 [Sup Ct, Nassau County 2008], quoting DeCabrera v Cabrera-Rosete, 70 NY2d 879, 881 [1987]). "A less-monied spouse should not be expected to exhaust or spend down a prospective or actual distributive award in order to pay counsel fees as the result of unreasonable or excessive litigation conduct by the adverse party" (Kaufman v Kaufman, 189 AD3d 31, 74-75 [2d Dept 2020]). "On the other hand, the more affluent spouse should not be treated as an open-ended checkbook expected to pay for exorbitant legal fees incurred by the less affluent spouse through excessive litigation or the assertion of unreasonable positions" (id. at 75). Further, the court "may award counsel fees as an offset against a party's equitable distribution award" (CBC v CLC, 76 Misc 3d 1222[A] [Sup Ct, Richmond County 2022], citing Kaufman v Kaufman, 189 AD3d 31, citing Karg v Kern, 125 AD3d 527 [1st Dept 2015]). 
Here, the Court found that although Defendant was not in compliance with the stipulation of settlement, he was making good faith efforts to pay Plaintiff the sums owed and completed those payments by the end of January. However, the Court also agrees that Plaintiff should not shoulder the economic burden of recovering those sums when Defendant could have been more forthright with the Court and Plaintiff when they settled the outstanding contempt application. Defendant agreed to make payment by certain dates, only to purportedly claim he was unable to transfer the funds as quickly as he agreed to. But there was plenty of time for Defendant to contact the Court after January 2, 2024 stipulation to request additional time to make the payments in light of his claim that he could only make $10,000.00 installments. Thus, the Court finds that under the circumstances, and in its discretion, Plaintiff is awarded $3,000.00 in counsel fees payable directly to Plaintiff's counsel within ten (10) days of this Decision and Order with Notice of Entry.
Accordingly, it is hereby
ORDERED that Plaintiff is awarded $3,000.00 in counsel fees payable by Defendant; and it is further
ORDERED that Defendant shall pay this counsel fee award directly to Plaintiff's counsel within ten (10) days of the date of this Decision and Order with Notice of Entry; and it is further
ORDERED that Plaintiff's attorney may enter judgment with the Clerk without need for further judicial intervention for any counsel fee award amount awarded herein that remains unpaid, together with costs and interest, upon ten (10) days written notice to Defendant should he fail to make payment as directed; and it is further
ORDERED that any relief not directly addressed herein is denied.
The foregoing constitutes the Decision and Order of the Court.
Dated: April 4, 2024
White Plains, New York
ENTER,
HON. JAMES L. HYER, J.S.C.